NORTHERN VIRGINIA RATES AND CLASSIFICATION SERVICE CENTER


UNITED STATES POSTAL SERVICE

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**

March 1, 1999

Errol Copilevitz
Copilevitz & Canter, P.C.
Attorneys at Law
423 W. Eighth Street, Suite 400
Kansas City, MO 64105

Re: Appeal of Revenue Deficiency Assessed Against Your Client:
Reese Brothers, Inc.

Dear Mr. Copilevitz:

The appeal of the June 1, 1998 decision by the Manager, Business Mail Entry, Pittsburgh, PA assessing a revenue deficiency of $3,223,580.99 against Reese Brothers, Inc. was forwarded to this office for review. For the reasons stated below, the deficiency is being upheld. Please make arrangements to pay this amount to "Postmaster, Pittsburgh" c/o Manager, Business Mail Entry, 1001 California Avenue, Rm. 2049, Pittsburgh, PA 15290-9651, (412) 359-1468, within 30 days of receipt of this letter.

While this decision is limited to the basis of the Manager, Business Mail Entry's finding in the revenue decision assessed by letter dated June 1, 1998, we have become concerned with a separate issue, specifically whether a portion of these mailpieces were bills or statements of account which should have been entered at First-Class Mail rates. Before we investigate this issue further, we would like to discuss it with you personally. You may contact the Manager, Northern Virginia Rates & Classification Service Center.

The Basis for the Revenue Deficiency

Reese Brothers, a for-profit entity, is not authorized to mail at the Nonprofit Standard Mail (A) rate. The basis for the revenue deficiency is Reese Brothers' impermissible use of the Nonprofit Standard Mail (A) rate for its mailings in cooperation with various organizations set forth in Enclosure A hereto. The deficiency assessed represents the difference between the Nonprofit rate claimed and the regular rate for Standard A postage.

Section E670.5.2 of the Domestic Mail Manual (DMM) generally provides that "cooperative mailings" such as those at issue in this revenue deficiency assessment, may be made at the Nonprofit Standard Mail (A) rate only when each of the cooperating organizations is individually authorized to mail at those rates at the post office where the mailing is deposited. Cooperative mailings involving the mailing of any matter on behalf of or produced for an organization not itself authorized to mail at the Nonprofit Standard Mail (A) rates where the mailing is deposited must be paid at the applicable regular rates.

5904 RICHMOND HIGHWAY
ALEXANDRIA VA 22303-2736
703 329 3660
FAX: 703 329 3682

The postal term "cooperative mailing" refers to mailings made at the Nonprofit Standard Mail (A) rates in which one or more of the parties "cooperate" with the authorized Nonprofit organization. A cooperative mailing can be defined as a mailing produced by an authorized organization that "cooperates" with one or more organizations to share the cost, risk, or benefit of the mailing. Pursuant to Section E670.5.1 of the DMM, an organization that is authorized to mail at the Nonprofit Standard Mail (A) rates may only mail its own matter at those rates, and the organization may not delegate or lend the use of its authorization to mail at the Nonprofit Standard Mail (A) rates to any other person or organization. For that reason, cooperative mailings that are made on behalf of or produced for any organization that is not itself authorized to mail at the Nonprofit Standard Mail (A) rates must be paid at the applicable regular rate.

Under the rules, the mailing must be owned by the authorized Nonprofit entity at the time of the mailing in order to be mailed at the special rates, and, for that reason, as the Reese Brothers' appeal points out, a cooperative mailing can be proper if the authorized organization uses a for-profit entity as an agent to mail matter which the Nonprofit organization owns. However, the mailer must be able to show that the relationship is a legitimate principal/agent relationship in order to use the Nonprofit Standard Mail (A) rate, and mailings may not be sent at the Nonprofit Standard Mail (A) rates if the mailing is made in support of a venture of an unauthorized entity or a cooperative enterprise between authorized and unauthorized entities, even if it is claimed that the mail matter itself is "owned" by the authorized entity. Ordinarily, a legitimate agent will not bear the risk of a venture that it is handling on behalf of a principal. Excellent guidance concerning the rules relating to cooperative mailings is set forth in Customer Support Ruling PS-209 and Chapter 5 of Publication 417, copies of which have been furnished to you.

In order to determine whether a cooperative mailing is acceptable at the Nonprofit Standard Mail (A) rate, an examination of the mailpiece is usually not sufficient, because it is necessary to determine the relationship between all of the participating entities. For this reason, we undertook a review of all the contracts that were furnished to us by Reese Brothers as evidence of the relationship between the parties which produced the mailings that are at issue here.

Generally, when a Nonprofit and a for-profit organization enter into a cooperative business venture, mail generated by the cooperative business venture is not eligible for the Nonprofit Standard Mail (A) rates.

The crucial elements used to analyze cooperative mail ventures are the allocation of the risk, and division of profits and management control. Factors to be considered include the identities of the party that devised, designed, prepared and paid for the mailpiece, and the party that directly or indirectly paid the postage on the mailings; the manner in which the unauthorized parties are compensated, the profits and revenues from the enterprise supported by the mailing are divided, the risks associated with the enterprise supported by the mailing are shared, and the managerial decisions are made concerning the content of the mailings or the enterprise it supports; the contribution which each participant makes towards the enterprise supported by the mailing; and the intent and interest of the participants in the mailings.

All of the contracts furnished to us by Reese Brothers relating to this revenue deficiency bear evidence of the type of cooperative venture which is not authorized to mail at the Nonprofit Standard Mail (A) rate. This is so particularly in light of the allocation of risk and the division of profits and management control associated with the endeavors between the parties. All of the contracts contain some form of a so-called "break-even guaranty." This means that Reese Brothers will get paid only if the fundraising efforts which are the basis of the cooperative venture are successful.

Furthermore, Reese Brothers maintains partial management control, because the parties are required to cooperate and to agree on changes to the materials which the cooperative venture prepares, and/or because the caging agent utilized to handle the funds generated by the endeavor is subject to approval by the parties. Another example of shared management control is Reese Brothers' right to continue collecting on pledges after the period of contract performance, including the mailing of dunning notices.

As further evidence of a cooperative venture, some of the contracts contain an explicit division of profits which sets forth a percentage split of any revenues generated by the endeavors and/or for a minimum guaranteed amount to be paid to the Nonprofit entity. This latter term ensures that if the fundraising effort generates no donations, it is Reese Brothers, not the Nonprofit entity, which will absorb the loss. Finally, in some of the agreements, Reese Brothers has and/or retains rights to the donor files/lists compiled and used in the solicitation efforts.

While it is true that some of the contracts set forth a fee schedule under which Reese Brothers is paid a specific amount for each of the specific types of services which it has agreed to perform, this is not the type of "fee-for-service" arrangement recommended by the Postal Service to avoid implicating the cooperative venture prohibition on use of the Nonprofit Standard Mail (A) rate. This is so because these contracts also provide that the Nonprofit is not obligated to pay the invoices from Reese Brothers unless the fundraising efforts of the cooperative venture generate sufficient funds to pay them. Once again, it is this sharing of risk between the Nonprofit and for-profit entities that renders the mailings ineligible for the Nonprofit Standard Mail (A) rate.

Other Arguments Raised by the Appeal

Reese Brothers alleges this revenue deficiency is incorrect because it is based on calculations using postal rates which are "incorrect as a matter of fact," but does not specify which rates are incorrect. We will ensure that appropriate adjustments are made, if warranted.

The arguments with respect to state law restrictions governing telemarketing and the lack of "extraneous products" contained in the mailpieces are not relevant to the revenue deficiency assessment. It is the mailpieces themselves that are not eligible for the Nonprofit Standard Mail (A) rate. That they are generated through telemarketing activities subject to state law restrictions and that they do not contain "extraneous products" is of no consequence to the revenue deficiency assessed by the USPS against them.

With respect to the due process and equal protection arguments, this review is in full compliance with Reese Brothers' rights. It affords the process required by law, DMM section P011.5.0, which is afforded to all similarly situated mailers.

With respect to the First Amendment and prior restraint arguments, Reese Brothers has never been denied access to mail. It is merely being assessed the lawful rate for mail generated by its business ventures, the same rate charged to all other similar matter.

With respect to the arguments that "the assessment is improper because it covers a period of time in excess of two years in violation of USPS policy," and is barred by the doctrines of laches and estoppel, we point out that collection of revenue deficiencies is governed by USPS Management Instruction, (MI), "Collecting Revenue Deficiencies," issued 6/16/89. There is no time period limitation. A copy of the 6/16/89 MI is enclosed.

With respect to the argument that the assessment is incorrect because it is contrary to "established policy of the USPS that allows vendors, in certain circumstances, to share or absorb risk," we know of no such policy.

Appeal Rights

In accordance with DMM section P011.5.1, this decision becomes final unless it is appealed in writing within 30 days of its receipt through this office to the Business Mail Acceptance manager, USPS Headquarters, 475 L'Enfant Plaza, S.W., Washington, D.C. 20260.

Sincerely,

John Nagla
Acting Manager

-Enclosure

cc: Manager, Business Mail Entry Pittsburgh PA
    Manager, Business Mail Acceptance
    Manager, Rates & Classification Service Center