# Reese Brothers, Inc.

---

## Memorandum in Support of Request for Reconsideration of February 15, 2001 Forbearance Decision

---

Nonprofit Service Group
Washington, DC
March 7, 2001

## I. Overview

With respect to the forbearance decision in the Reese Brothers, Inc. ("RBI") case, the courts will evaluate whether the Postal Service administered its program in an impartial, fair, and competent manner. This review arises from the Administrative Procedures Act 5 U.S.C. § 706(2)(A). The basic question is whether the agency's action was "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law."

When the courts review whether an agency administered its program in a fair, impartial and competent manner, the inquiry is sometimes called review for "arbitrariness," review for "abuse of discretion," and sometimes it's referred to as "rational basis" review.

The respondent's position is that the agency administrator was partial and abused his discretion. Now is the time to clarify the administrative record in order to ensure that the forbearance decision in the RBI case meets the threshold of minimum fairness and rationality that judicial review is designed to ensure.

## II. The postal forbearance decision maker appears partial.

Before RBI had even received the Final Agency Decision in the underlying Classification case, the agency forbearance administrator, George L. Lippert, Manager Finance, Pittsburgh District, issued a written decision that denied forbearance from collection of the revenue deficiency assessed in the underlying Classification decision.[1] The Philadelphia Law Department subsequently granted an opportunity to RBI to submit a brief in support of its request for forbearance.

In arguing on behalf of RBI for an opportunity to file a brief in support of forbearance, RBI counsel objected to Philadelphia's directive to send the request and supporting brief

---

[1] Letter from George L. Lippert, Manager Finance, Pittsburgh District, U.S. Postal Service, to Reese Brothers, Inc., March 17, 2000 (hereinafter referred to as the "Lippert Preemptive Forbearance Denial Letter"). A true and correct copy of this letter was attached to RBI's brief in support of its request for forbearance as Exhibit 3.

to Mr. Lippert. Traditional notions of fair play and justice would dictate that a postal administrator other than Mr. Lippert review RBI's brief in support of forbearance.

Because of the appearance of partiality, the burden is on the Postal Service to demonstrate impartiality. What steps did Mr. Lippert take in order to ensure that his review of the RBI forbearance brief would be impartial?

In his second forbearance decision dated February 15, 2001, Mr. Lippert merely asserted: "Pleased be advised that this [RBI's] request for mitigation received significant and serious consideration." [2] Mr. Lippert did not indicate which USPS decision maker gave "significant and serious consideration" to the RBI forbearance brief. Presumably he was referring to himself.

Nor does "significant and serious consideration" indicate what steps he instituted in order to ensure that his preemptive forbearance judgment, dated March 17, 2000, in no way influenced his subsequent consideration of the RBI brief in support of forbearance and his second forbearance denial, dated February 15, 2001.

The requirement of impartiality is fundamental in administrative law. There isn't any evidence that the agency administrator in the RBI forbearance case was impartial and overcame the appearance of partiality in rendering his second and final forbearance decision.

### III. **Abuse of discretion**

Case law has established five major categories of administrative action in which a reviewing court may properly hold that an agency has abused its discretion. Three exist in the RBI forbearance decision as follows:

    (1)   The administrator's discretionary decision is inconsistent with the agency's own rules.

    (2)   The particular remedy is too harsh because the agency

---

[2] Letter from George L. Lippert, Manager Finance, Pittsburgh District, U.S. Postal Service, to Reese Brothers, Inc., February 15, 2001 (hereinafter referred to as the "Second Lippert Forbearance Denial Letter").

      did not explain satisfactorily why it did not choose a less drastic sanction.

(3) The agency has not really taken a hard look at the salient problems and has not genuinely engaged in reasoned decision-making.

A. **The administrator's discretionary decision is inconsistent with the agency's own rules.**

The valid regulation for forbearance from collection of an assessed postage deficiency is set forth in <u>Management Instruction</u> DM-140-1999-1. It requires the respondent to " . . . demonstrate financial hardship." [3]

The official charged with making the forbearance decision in the RBI case did not apply the valid administrative regulation, "financial hardship," cited above. Instead, Mr. Lippert applied the Porras national forbearance policy.

Actually, Mr. Lippert applied the Porras policy twice to RBI. That's because Mr. Lippert made two forbearance rulings, first preemptively on March 17, 2000 and a second time on February 15, 2001. After Mr. Lippert denied forbearance to RBI preemptively on March 17, 2000, the Philadelphia Law Department agreed to meet with RBI's counsel at postal headquarters in Washington, DC on March 29, 2000.

Following that meeting, field counsel in Philadelphia wrote to RBI's Washington counsel to notify him of the decision to grant RBI until April 28, 2000 to file a request for and brief in support of forbearance. In that letter dated March 31, 2000, field counsel articulated the forbearance standard as follows:

> At this stage of the administrative process, in accordance with the Management Instruction that governs assessment and collection of deficiencies in postage or fees, Reese Brothers has the right to request the Manager of Finance, Pittsburgh, Pennsyl-

---

[3] United States Postal Service, <u>Management Instruction</u>, "Assessing and Collecting Deficiencies in Postage or Fees," DM-140-1999-1, September 14, 1999 at 9.

vania, to reduce or waive the deficiency based upon <u>financial hardship</u>. [4]

The standard that the agency actually applied to RBI relative to forbearance was quite different from the financial hardship standard set forth in the Management Instruction. In his Preemptive Forbearance Denial Letter, Mr. Lippert applied a two-part test as follows:

(1) . . . whether the mailer or its agent received written or verbal rulings or training and

(2) . . . the experience of the mailer or its agent and if they should have reasonably known that the mail was not eligible for the rates claimed. [5]

Mr. Lippert advised that this two-part test was a "new policy:" "On January 11, 2000, the USPS announced a new direction for it's [sic] revenue assurance process." [6]

The new policy that Mr. Lippert referred to is the so-called Porras policy, named after the Postal Service's then-Chief Financial Officer, M. Richard Porras. Mr. Lippert's articulation of the Porras national forbearance policy, however, differs markedly from Mr. Porras' own description of his policy.

> We will provide mailers with notice of problems and recommend remedies. Deficiencies will not be assessed as part of this notice process. However, if after notice is given and <u>identified</u> problems continue to occur, deficiencies will be assessed. [7]

---

[4] Letter from Helen Grant, Attorney, Law Department Philadelphia Field Office, U.S. Postal Service, to George E. Miller, Esq., Nonprofit Service Group, March 31, 2000 (hereinafter referred to as "Philadelphia Law Department Letter") (emphasis added). A true and correct copy of the letter was attached to RBI's brief in support of its request for forbearance as Exhibit 1.

[5] Lippert Preemptive Forbearance Denial Letter, <u>supra</u> note 1.

[6] <u>Id.</u>

[7] Letter from M. Richard Porras, Chief Financial Officer and Executive Vice President, U.S. Postal Service, to Joseph E. Schick, Industry Chair, Mailers Technical Advisory Committee,

It seems clear under Mr. Porras' articulation of the national policy that the Postal Service will assess a deficiency (1) only after notice is given and (2) only if the identified problems continue to occur. The "notice" that Mr. Lippert identified in his preemptive denial was a 1990 case (1991 final agency decision).

The subsequent brief that RBI submitted to Mr. Lippert in support of RBI's request for forbearance detailed how RBI and its charity client acted immediately upon receipt of the 1991 RCSC Decision Letter. RBI's charity client ceased to mail the offending piece and has never mailed it again.

In any case, Mr. Porras' articulation of his national forbearance policy differs significantly from Mr. Lippert's articulation of Porras' policy. Their respective articulations represent two different standards, and both differ from the agency's published regulation that governs forbearance from collection of a deficiency, "financial hardship."

RBI addressed the financial hardship standard in its April 28, 2000 brief in support of forbearance. When Mr. Lippert finally responded eight and one-half months later, his letter was silent regarding RBI's claim of financial hardship.[8]

The courts have held that an administrator's discretionary decision may be unlawful if it is inconsistent with the agency's own rules.[9] Even the Postal Service's field counsel observed that the governing rule was the agency's Management Instruction.

B. **The particular remedy is too harsh because the agency did not explain satisfactorily why it did not choose a less drastic sanction**.

The Final Agency Decision in the RBI case was dated March 13, 2000. In his Preemptive Forbearance Denial Letter dated

---

January 11, 2000 (emphasis added). A true and correct copy of this letter was attached to RBI's brief in support of its request for forbearance as Exhibit 6.
    [8]  Second Lippert Forbearance Denial Letter, supra note 2.
    [9]  United States v. Nixon, 418 U.S. 683 (1974)(In a closely related context, the Supreme Court adopted the legal reasoning of the trial court that dismissal of the Watergate Special Prosecutor without cause violated a valid agency regulation.)

March 17, 2000, Mr. Lippert upheld the decision of Pittsburgh Business Mail Entry in May, 1998 that assessed back postage to RBI for the mail pieces of its charity-clients back to 1993.

In his Second Forbearance Denial Letter, Mr. Lippert defended the amount of the retroactive assessment in his Preemptive Forbearance Denial Letter but announced his decision to reduce the amount of the deficiency by 54 percent as follows:

> While it was administratively appropriate to assess deficiencies for this period of time [six years], I have determined that deficiencies assessed against other mailers were often limited to a two-year period. [10]

The problem with Mr. Lippert's justification is that the amount of the reduction is arbitrary. Without further explanation, one may only guess why a two-year retroactive assessment is more appropriate than a one-year assessment or forbearance from collection of the full amount.

In addition to reducing deficiencies for other mailers to a two-year period, the Postal Service also has reduced deficiency assessments for periods much shorter than two years and has forgiven deficiency assessments in their entirety.

RBI's brief in support of its request for forbearance analyzed a case where the deficiency was reduced to one mailing. The RBI brief pointed out that the other case involved a clear cut infraction of postal regulations; the nonprofit client's mail agent was one of the nation's largest, most profitable, and most experienced in terms of knowledge of the particular regulation at issue in that case.

Mr. Lippert failed to supply one word of analysis or any facts to explain how RBI is analogous to "other mailers [whose deficiencies] were often limited to a two-year period." Because Mr. Lippert failed to identify the "other mailers" to whom he referred, it is impossible for RBI to analyze those USPS decisions independently of Mr. Lippert. Nor did Lippert refute the example and analysis that RBI proffered to show that consistency would dictate reducing the deficiency to a period of less than two years.

The courts have held that a particular remedy is too harsh

---

[10] Lippert Second Forbearance Denial Letter, supra note 2.

if the agency has not explained satisfactorily why it did not choose a less onerous sanction.  See e.g. Jacob Siegel Co. v. FTC, 327 U.S. 608(1946)(remanded FTC order that company abandon its allegedly deceptive brand name without seriously considering whether an informational label would have sufficed).

The courts also have intervened when an agency adopts a retroactive decision, if they think that the public interest in enforcement is outweighed by the "ill effect of the retroactive application of a new standard" on the respondent.  In National Labor Relations Board v. E&B Brewing Company, Inc., 276 F.2d 594, 600 (1960), the court established the test for retroactive application as follows:

> But in particular cases, for a board to make its new ruling retroactive may well be an abuse of discretion.  And this court, under the Administrative Procedure Act § 10(e) (Title § 1009(e)[,] is required to 'hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, and abuse of discretion. * * * ' . . . The test is whether 'the practical operation of the Board's change of policy * * * [will] work hardship upon the respondent altogether out of proportion to the public ends to be accomplished.'  (citation omitted)  This is in accord with the limitations upon retroactivity which were recognized in the Chenery Corp. case, supra, where it was noted that 'ill effect of the retroactive application of a new standard' must be balanced against the necessities of the public.  In weighing these matters here we are impressed with the fact that there appears no reason why the public interest demands that the new rule be imposed at once, and now, as to this particular contract.

In order to pass judicial review, not only must the agency explain satisfactorily why it did not choose a less drastic sanction, but also it must show that it weighed the public's interest in enforcement against the unfairness of imposing a sanction retroactively for conduct that the respondent had reason to believe was lawful. [11]

---

[11] It is ironic that Respondent RBI finds itself in this position when the major "offense" in the underlying Classification case arises from Respondent's obligation as a professional solicitor for charities to comply with state laws that

C.  **The administrator has not genuinely engaged in reasoned decision-making**.

Courts also measure agency actions against the "reasoned decision making" standard. The classic articulation of this standard is found in Greater Boston Television Corp. v. FCC, 444 F.2d 841, 850-2 (D.C.Cir.1970), cert. denied, 403 U.S. 923(1971): The court will intervene if it "becomes aware, especially through a combination of danger signals, that the agency has not really taken a 'hard look' at the salient problems, and has not genuinely engaged in reasoned decision-making." The "reasoned decision making" standard is also known as "hard look" doctrine.

There are a number of danger signals in the RBI forbearance case. This section analyzes four.

(1)  **Danger signal #1: The Porras policy standard that Lippert applied is different than the Porras policy standard that Mr. Porras articulated without any explanation why the applied standard differs from the original Porras standard**.

In his Preemptive Forbearance Denial Letter to RBI, Mr. Lippert articulated the Porras national forbearance policy as a two-part test:

(1)  ". . . whether the mailer or its agent received written or verbal rulings or training" and

(2)  ". . . the experience of the mailer or its agent and if they should have reasonably known that the mail was not eligible for the rates claimed."

Mr. Lippert cited January 11, 2000 as the date on which the Postal Service articulated this national forbearance policy.

Even a look less rigorous than a "hard look" at the January 11, 2000 document would have revealed that Mr. Porras'

---

mandate percentage guarantees or requirements. Conn. Stat. § 21a-190f(d), Ga. Stat. § 43-17-3(e)(3), Ind. Stat. § 23-7-8-2(e), Md. Stat. § 6-616(2), Mass. Stat. 68 § 22(b)(2), N.H. Stat. § 7:28-c(V)(a), N.C. Stat. § 131F-16(g)(3), Ohio Stat. § 171608(A), Pa. Stat. § 162.9(f)(4), S.D. Stat. § 37-30-7, Utah Stat. § 13-22-9(1)(b)(vii)(D), Vt. Stat. § 2472(a)(1), and Wis. Stat. § 440.44(4)(a).

articulation of his two-part test varied from the test that his subordinate in Pittsburgh, Mr. Lippert, articulated.  Mr. Porras set forth his two-part test as follows:

> We will provide mailers with notice of problems and recommend remedies.  Deficiencies will not be assessed as part of this notice process.  However, if after notice is given and <u>identified</u> problems continue to occur, deficiencies will be assessed. [12]

It seems clear under Mr. Porras' articulation of the two-part standard that the Postal Service will assess a deficiency (1) only after notice is given and (2) only if the identified problems continue to occur.  The "notice" that Mr. Lippert identified in his preemptive denial letter was a 1990 case (1991 final agency decision). [13]

That two-part test differs from the two-part test that Mr. Lippert articulated in his Preemptive Forbearance Denial Letter, in particular the second test.  For Mr. Porras, the issue is whether "the identified problem continued to occur."  For Mr. Lippert, the issue is whether the mailer or its agent [RBI] "should have reasonably known that mail was ineligible for the nonprofit rate."

After Lippert's Preemptive Forbearance Denial Letter, the Philadelphia Law Department afforded an opportunity to RBI to request and prepare a brief in support of forbearance.  RBI was able to address the two-part standard that Lippert articulated

---

[12] Letter from M. Richard Porras, Chief Financial Officer and Executive Vice President, U.S. Postal Service, to Joseph E. Schick, Industry Chair, Mailers Technical Advisory Committee, January 11, 2000 at 2 (emphasis added).  (A true and correct copy of this letter was attached to RBI's brief in support of its request for forbearance as Exhibit 6.)

[13] The Postal Service never gave notice, in the plain English meaning of the word, that the mail pieces in the RBI case violated mail regulations.  The mail piece associated with the 1991 RCSC Decision was very different from the mail pieces in the instant case.  In 1998, top postal officials had been aware for years of the state-mandated guarantees, the reason that state Attorneys General wanted such guarantees, and that contracts between national professional solicitors and their respective charity clients contained such provisions in order to comply with state laws.

in his Preemptive Forbearance Denial Letter, and the RBI brief showed how RBI was eligible for forbearance under Mr. Lippert's articulation of the Porras two-part test.

The RBI brief that was submitted to Mr. Lippert on April 28, 2000 also showed how RBI was eligible for forbearance under Mr. Porras' articulation of the Porras two-part test. The brief detailed how RBI and its charity client acted immediately upon receipt of the 1991 RCSC Decision Letter. RBI's charity client ceased to mail the offending piece and has never mailed it again.

In his Second Forbearance Denial Letter, Mr. Lippert was silent as to why his articulation of the two-part Porras test in his Preemptive Forbearance Denial Letter trumps Mr. Porras' articulation of his two-part test in his January 11, 2000 letter. Mr. Lippert did not give any indication that he had given a "hard look" at the differences between the two standards.

Nor did the Lippert Second Forbearance Denial Letter refute or even analyze the analysis in the RBI forbearance brief that showed how RBI and its charity clients satisfied both articulations of the so-called Porras two-part test. Under the "reasoned decision making" standard of judicial review, the administrator needs to demonstrate that he "genuinely engaged in reasoned decision-making" in order to fulfill the agency's obligations under the court's "hard look" doctrine. That Mr. Lippert clearly did not do.

    (2)   **Danger signal #2:  Merely to assert "reasoned decision making" is insufficient to pass judicial review**.

In looking for evidence that the administrator "genuinely engaged in reasoned decision-making," the only indication in the Second Forbearance Denial Letter is Mr. Lippert's assertion: "Pleased be advised that this [RBI's] request for mitigation received significant and serious consideration."

Lippert did not indicate which USPS decision maker gave "significant and serious consideration" to the RBI forbearance brief. Presumably Lippert was referring to himself. Nor did he supply any other information--factual, empirical, or analytical--to demonstrate that the administrator "genuinely engaged in reasoned decision-making." Mr. Lippert merely asserted that

someone at the agency gave "significant and serious consideration."

To assert "reasoned decision-making" is quite different from demonstrating "reasoned decision-making." That the agency has not done to date with respect to forbearance in the RBI case.

### (3) Danger signal #3: Conclusory statements devoid of factual findings

The Second Lippert Forbearance Denial Letter failed to articulate any reason why the administrator denied RBI's request for total forbearance other than to reiterate the conclusion in the Preemptive Forbearance Denial Letter of almost a year earlier. Lippert failed to articulate any analysis or give any reason why he rejected the three reasons that RBI proffered to support its request for forbearance: (a) the Porras forbearance policy, (b) the conflict between state charitable solicitation law and the Postal Service's interpretation of the statutory ownership test, and (c) financial hardship.

Lippert merely asserted: "I concur with the determination that the deficiency does not fall within the parameters for forgiveness under the Porras' [sic] memorandum."

Although Lippert failed to provide a citation for the determination to which he referred, presumably Lippert referred to the determination that he made in his preemptive denial of forbearance dated March 17, 2000.

Merely to re-state his earlier preemptive conclusion fails to satisfy the Court's standard for judicial review in Chevron, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984). In Chevron, the U.S. Supreme Court held that the agency bears the burden to show that its application of the statute is reasonable. Otherwise, the agency will fail to meet the standard of review to which the Court holds federal agencies.

The Court explained its two-part standard of review for agency decisions as follows:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always is

> the question whether Congress has directly spoken
> to the precise question at issue. If the intent
> of Congress is clear, that is the end of the
> matter; for the Court, as well as the agency,
> must give effect to the unambiguously expressed
> intent of Congress. . . [I]f the statute is
> silent or ambiguous with respect to the specific
> issue, the question for the court is whether the
> agency's answer is based on a permissible con-
> struction of the statute. [14]

Thus, if the intent of Congress is unambiguous, the court should apply the statute itself. If it is ambiguous, the court will be able to determine if the agency's construction is permissible _only if_ the agency has articulated a reason in the administrative record for the court to review.

As recently as August 18, 1998, the United States District Court for the District of Columbia applied the judicial review standards under 5 U.S.C. § 706(2) to a Postal Service postage deficiency ruling. The Court advised that "...an agency must articulate something more than conclusory statements devoid of factual findings." [15] The Court pointed out that it must be able "to 'reasonably discern' the path that [the agency] followed in reaching in its conclusion."

> Where agencies have ignored this fundamental
> tenet of administrative practice, this Circuit
> has not hesitated to remand the controversy to
> the agency. _See, e.g., Lima [v. N.L.R.B.]_,
> 819 F.2d at 303 ('Without some explanation of
> how the Board reached its conclusion, we have
> no basis in the record upon which to evaluate
> whether the Board's application of the . . .
> rule is rational, based on substantial evidence,
> and consistent with the Board's own precedents.').[16]

The _Livingston_ Court also cited _Gallo v. Amaco Corp._, 102 F.3d 918, 923 (7th Circuit, 1996), and noted its holding as follows: "[R]emand is the proper remedy where an agency fails

---

[14] _Chevron_ at 842-43, supra p. 11.
[15] _David Livingston Missionary Foundation, Inc. v. U.S. Postal Service_, "Memorandum Opinion," Civil Action No. 97-02046 (CKK) at 2.
[16] _Id._ at 3.

to make adequate finding or fails to explain its grounds adequately . . . ." [17]

For Lippert to assert that "I concur with the determination that the deficiency does not fall within the parameters for forgiveness under the Porras' [sic] memorandum," is nothing ". . . more than conclusory statements devoid of factual findings."

### (4) Danger signal #4: The amount of reduction of retroactive postage assessment is arbitrary.

The Postal Service's Final Agency Decision dated March 13, 2000 upheld the decision of Pittsburgh Business Mail Entry in May, 1998 that assessed back postage to RBI for the mail pieces of its charity-clients back to 1993. In his second forbearance decision dated February 15, 2001, Mr. Lippert defended the amount in his Preemptive Forbearance Denial Letter but announced his decision to reduce the amount of the deficiency by 54 percent as follows:

> While it was administratively appropriate to assess deficiencies for this period of time [six years], I have determined that deficiencies assessed against other mailers were often limited to a two-year period.

The problem with this justification is that the amount of reduction is arbitrary. In addition to reducing deficiencies to a two-year period, the Postal Service also has forgiven deficiency assessments for longer periods and in their entirety.

RBI's brief in support of its request for forbearance analyzed one such case. The brief showed how that other case was a clear cut infraction of postal regulations. The nonprofit client's mail agent was one of the nation's largest, most profitable, and most experienced in terms of knowledge of the particular regulation at issue in that case. Nonetheless, the agency reduced the assessed deficiency to one mailing.

Lippert failed to supply one word of analysis or any facts to explain how RBI is analogous to "other mailers [whose deficiencies] were often limited to a two-year period." Nor did Lippert refute the example and analysis that RBI proffered to

---

[17] Livingston at 4.

show that total forgiveness or reduction for a period of less than two years would be arbitrary.

The point is that Lippert, speaking on behalf of the agency, ". . . fails to make adequate finding or fails to explain its grounds adequately" to justify reduction of the deficiency claim to a two-year period as opposed to total forgiveness. In that instance, ". . . remand is the proper remedy . . ." [18]

## IV. Conclusion

In applying the standards that the courts use, the Postal Service's forbearance decision in the RBI case is grossly flawed and unfair, and its forbearance decision as it now stands will fail judicial review. The agency forbearance administrator in this case appears partial. When he was tasked with reviewing RBI's appeal from the agency administrator's original decision, he failed to offer any evidence to overcome the appearance of partiality.

As serious, the agency abused its discretion in at least three ways. First, the administrator's discretionary decision is inconsistent with the agency's own rule that governs forbearance from collection of assessed deficiencies. Second, the administrator failed to explain why a less harsh remedy than the one he proffered in his final decision would be inappropriate. Third, the administrator failed to show that he genuinely engaged in reasoned decision making. On the contrary, the record gives rise to the conclusion that the agency administrator did not engage in reasoned decision making.

Because it is probable that the Second Lippert Forbearance Decision will be remanded upon judicial review, the prudent course at this juncture, certainly from the point of view of expenditure of federal taxpayer dollars, would be to reconsider the forbearance decision.

---

[18] Id.