# COPILEVITZ & CANTER, P.C.
### ATTORNEYS AT LAW

423 W. EIGHTH STREET
SUITE 400
KANSAS CITY, MISSOURI 64105
(816) 472-9000 • FAX (816) 472-5000
E-MAIL cckc@aol.com

3 LAFAYETTE CENTER, SUITE 330
1155 21ST STREET, N.W.
WASHINGTON, D.C. 20036-3308
(202) 861-0740 • FAX (202) 331-9841
E-MAIL copcandc@us.net

*PLEASE REPLY TO THE MISSOURI OFFICE*

October 21, 1998

Ms. Christine M. Taylor
Attorney
Law Department - Civil Practice
United States Postal Service
475 L'Enfant Plaza, SW - Rm. 6235
Washington, D.C. 20260

VIA FACSIMILE ONLY

Re: **Reese Brothers, Inc.**
   Case No. 384-1233408-RI(1)

Dear Ms. Taylor:

Pursuant to our discussion I have been considering how to approach the contract issue. My initial thought is to divide the contract into two component parts.

The preliminary activity conducted by Reese Brothers is to make a call on behalf of the charitable organization. The individual who expresses an interest in receiving the materials and/or making a contribution is then initially contacted by first class mail. This part of the contract could contain guarantees and hold harmless provisions. The use of the nonprofit bulk rate is only initiated when the potential donor has failed to respond in a timely manner to the first mail piece sent at the commercial rate. Therefore, the second part of the contract would provide that subsequent mailings to prospective donors which are sent at the nonprofit rate will be paid for by the charitable organization. This language would require the charity to pay the postage and set a fee for each mail piece, making the transaction a "fee for services."

We still have to deal with the guaranteed return provision mandated by the states, but obviously the bulk of the guarantee would be applicable to the first portion of the agreement, and would also be given on a de minimis basis. Even if the activities are divided into separate agreements these state mandated guarantees would still have to be addressed. Therefore, I believe the concept of dividing the activities within the contract would be the best solution. (Unfortunately, the states will not allow a contract to differentiate in the guarantees as they may relate to an activity within the contract. The states require that the guarantees apply to the contract as a whole).

Ms. Christine M. Taylor
October 21, 1998
Page 2

If you have some additional ideas regarding the foregoing, I am certainly open to any suggestions you might have.

Very truly yours,

Errol Copilevitz
For the Firm

EC:nas

# COPILEVITZ & CANTER, P.C.
### ATTORNEYS AT LAW

423 W. EIGHTH STREET
SUITE 400
KANSAS CITY, MISSOURI 64105
(816) 472-9000 • FAX (816) 472-5000
E-MAIL cckc@aol.com

3 LAFAYETTE CENTER, SUITE 330
1155 21ST STREET, N.W.
WASHINGTON, D.C. 20036-3308
(202) 861-0740 • FAX (202) 331-9841
E-MAIL copcandc@us.net

*PLEASE REPLY TO THE MISSOURI OFFICE*

November 18, 1998

Ms. Christine M. Taylor
Attorney
Law Department - Civil Practice
United States Postal Service
475 L'Enfant Plaza, S.W. - Rm. 6235
Washington, D.C. 20260

**VIA EXPRESS MAIL**

**Re: Reese Brothers, Inc.**
    Case No. 384-1233408-RI(1)

Dear Ms. Taylor:

Pursuant to our discussions, please find enclosed a prototype agreement incorporating specific references to the use of the nonprofit postal rate. In particular, I call your attention to the exception set forth in Section 4.(c)(3) which, in the last sentence, provides an exception to those mailings made at the nonprofit rate that are to be billed separately pursuant to Section 8.

The new Section 8, which has been added to the standard agreement, provides for the use of the nonprofit mailing rate when the client is a qualified permit holder. This provision expressly provides that the nonprofit mailing rate will only be used to send mail to individuals who have previously expressed a desire to receive information from the nonprofit organization; the permit holder pays the cost of the mailing; and, there is a fee for services agreement. Additionally, as noted in Section 8.D., those fees will be fixed and treated separately from the remaining fee provisions in the agreement.

I would appreciate your reviewing this agreement and advising me whether it will serve to resolve the outstanding issues involving our client. If you wish to discuss any portion of the agreement, I will be pleased to do so at your first convenience.

Ms. Christine M. Taylor
November 18, 1998
Page 2

I will look forward to hearing from you as soon as possible.

Very truly yours,


Errol Copilevitz
For the Firm

EC:nas

Enclosure

c: Reese Brother, Inc.
   George Miller, Esq.

Reese Brothers, Inc.
925 Penn Avenue
Pittsburgh, PA 15222-3883
412.355.0800  800.365.3500
Fax 800.365.3500 x265

# reesebrothers

March 17, 1999

Mr. James Gebbie
Midwest Direct Marketing Services, Inc.
2222 W. 110th Street
Cleveland, OH 44102-3512

Dear Jim:

Based on a telephone call Alex Shahidi received from Frank LaRocco today, I understand that as of today the Cleveland Post Office has been asked by the National Post Office officials to cease accepting non profit rate mail from customers of Reese Brothers until such a time as the Post Office is satisfied that the arrangements between Reese Brothers, Midwest and the individual non profit groups qualify the mailings on behalf of the non profit groups for non profit postage rates. We further understand that Midwest is filing an appeal with the Post Office requesting that the mail in question be allowed at the non profit postage rates. As requested by Frank LaRocco, enclosed please find copies of the amendments to our contracts with the non profit groups whereby the individual non profit groups (a) authorize Reese Brothers to obtain an independent mailing agent, and (b) accept full financial responsibility for the mail submitted at non profit mail rates.

Beginning immediately and until such a time as the Post Office again allows non profit rate mail to be submitted for our non profit customers, please meter all mail which would have otherwise been metered at non profit postage rates at the applicable bulk mail rates. The mailings on behalf of our non profit customers should not be held by Midwest pending the resolution of this issue. Thank you.

Sincerely,

Barry Reese

cc: Gene Cunningham, esq.
    Edwin Grinberg, esq.

# COPILEVITZ & CANTER, LLC
ATTORNEYS AT LAW

423 W. EIGHTH STREET
SUITE 400
KANSAS CITY, MISSOURI 64105
(816) 472-9000 • FAX (816) 472-5000
E-MAIL cckc@aol.com

1015 H STREET, N.W.
SUITE 501
WASHINGTON, D.C. 20005
(202) 861-0740 • FAX (202) 331-9841
E-MAIL cnpccandc@ns.net

PLEASE REPLY TO THE MISSOURI OFFICE

March 19, 1999

Mr. John Nagla
Acting Manager
USPS - RCSC
5904 Richmond Highway, Suite 500
Alexandria, VA 22303-2736

**VIA FACSIMILE
AND U.S. MAIL**

Re: Reese Brothers, Inc.

Dear Mr. Nagla:

Pursuant to our telephone conversation of Thursday, March 18, 1999, wherein I advised you that I represent Reese Brothers concerning the outstanding issues on the use of the nonprofit rate by charities which work with Reese Brothers.

Charities hire Reese Brothers to place a telephone call and solicit financial support on their behalf. The first mail piece that is sent out as a result of those calls is mailed at the first class rate. When a dispute arose over subsequent mailings, and after discussions with the USPS legal counsel, in February Reese Brothers made the decision to reformat its contractual relationship with its clients. The charities were given the opportunity to remove subsequent mailings and the charges for them from their agreements with Reese Brothers. Each charity signed a letter like those attached hereto.

Reese Brothers reduced its charge to the charities by an amount equal to what its charges would have been to perform the same service. The charities then hired Mid-West Presort Mailing Services, Inc., which is an independent third party. The charities assumed all risk of mailing through Mid-West, and neither Reese Brothers nor Mid-West Presort Mailing Services had an interest in the mailings sent by the nonprofit bulk rate.

I would appreciate your reviewing the materials provided and advising the undersigned pursuant to our earlier conversation.

Mr. John Nagla
March 19, 1999
Page 2

Thank you for your courtesies in this matter.

Very truly yours,

Errol Copilevitz
For the Firm

EC:nas

c: Reese Brothers, Inc.
   Midwest Presort Mailing Services, Inc.