# Nonprofit Service Group

Suite 1201
1601 N. Kent Street
Arlington, VA 22209

703/528-7525
Fax 703/807-0793

George E. Miller, Esq.*†
Janice L. Anderson, Esq.*‡
Carolyn A. Emigh, J.D. ††

Keith E. Negrin, Esq. ††
Dustin A. Nichols ††
Christianne L. Testamark ††

* In District of Columbia and Virginia, practice limited to matters and proceedings before federal courts and agencies

† Missouri Bar only
‡ Pennsylvania and New Jersey Bars only
†† Not a member of the Bar

February 4, 2002

Mr. Jeff Zelkowitz
Senior Counsel
Law Department - Civil Practice
United States Postal Service
475 L'Enfant Plaza, SW  Room 6239
Washington, DC  20260-1127

Re: <u>Reese Brothers, Inc. (RBI)</u>

Dear Jeff:

Enclosed please find a copy of several contracts between professional solicitors and nonprofit mail permit holders. We asked the Secretary of State's Office in Annapolis, MD to pull a random sample of contracts from the public records. Most states require the for-profit fundraiser and nonprofit client to file their written contract with the Secretary of State who maintains them for public inspection.

Please note that each of these contracts contains guaranteed payment clauses similar to those found in the RBI contracts which was the basis for the postage deficiency ruling **PPD:MPS:EStein:14448 Reese Brothers, Inc.** ("RBI Deficiency Ruling"). The contracts fall into two groups based on the guarantee provision.

The contracts in the first group guarantee a <u>fixed dollar amount</u> to the charitable client over a given period. Six of contracts they pulled fall into Group I. The second group of contracts contains clauses that guarantee a <u>fixed percentage of the gross revenue</u> raised from the particular mailing. Attached please find an index of the enclosed contracts.

Each set of contracts poses the same issues raised by the RBI contracts. One of the contracts in Group II is between Heritage Publishing Company ("Heritage") and a former RBI client, Mothers Against Drunk Driving ("MADD"). MADD's follow up pledge notices that it mailed at the nonprofit rate make up

almost one-third of the total amount that the Postal Service assessed in the RBI Deficiency Ruling.

The "new" contract that MADD signed with Heritage makes guarantees similar to those in the RBI contract. We remain at a loss to explain, after almost four years, why the Postal Service denies the nonprofit mail rate to MADD if it were to engage RBI but accepts MADD's follow-up pledge notices at the nonprofit rate as long as MADD engages a competitor, Heritage, to perform the same functions that RBI performed with similar guarantees.

What is particular troubling about Heritage is the fact that it was one of three professional solicitors that the Inspection Service originally audited in 1997. Either Heritage failed to comply fully with the Postal Inspection Service's subpoena, or Heritage complied and the Inspection Service received, as it did from Reese, copies of all contracts between Heritage and its nonprofit clients.

Based on conversations with its counsel at that time, Heritage's contracts had similar guarantee provisions in their agreements as those found in the Reese Bros. contracts. Both Reese and Heritage include these guarantee provisions in their contracts in order to compile with state charitable solicitation laws.

The same is true for each of the other professional solicitors in Groups I and II. They include the guarantee provisions in their respective contracts with nonprofit mail permit holders in order to comply with state law.

Since 1998, RBI has lost an enormous volume of business, and incurred significant damages, because its 35 former charitable clients could continue to mail their follow-up pledges notices at the nonprofit rate and continue to benefit from guarantees--in some cases they negotiated better guarantees--as long as each engaged any professional solicitor other than RBI including Heritage. Given the facts, we ask why wasn't Heritage, at a minimum, treated the same way as Reese Bros.?

RBI is not a class of one, yet for four years the Postal Service has applied its interpretation of the Cooperative Mail Rule as it relates to contractual guaranteed payments as though RBI were the only professional solicitor that complies with state law.

- 3 -

Thank you for consideration of this matter.

Sincerely,

*George*

George E. Miller

Enclosures

## Professional Solicitor Contracts with Guarantee Provisions

| Professional Solicitor | Permit Holder | Guarantee |
|---|---|---|
| Group I: | | |
| ======== | | |
| American Trade & Convention | Purple Heart Service Foundation | $1.6M/yr |
| Tele-Response Center | SADD | $1M/yr |
| Civic Development Group | Fraternal Order of Police | $400K/yr |
| LAS, L.L.C. | Childhood Leukemia Foundation | $265K/yr |
| American Trade & Convention | Nat'l Assoc of Police Athletic Leagues | $150K/yr |
| American Trade & Convention | Veterans Assistance Foundation | $75K/yr |
| | | |
| Group II: | | |
| ========= | | |
| Heritage Publishing | MADD | 50% |
| Tele-Response Center | Multiple Sclerosis Association of Amer | 50% |
| Tele-Response Center | Operation Lookout | 30% |
| Futuremarket Telecenter | National Children's Cancer Society | 30% |
| Civic Development Group | Firefighters Charitable Foundation | 14% |
| LAS, L.L.C. | Int'l Narcotic Enforcement Officers Assoc | 12% |
| Heritage Publishing | Vanished Children's Alliance | 10% |
| InfoCision | Bible League | 1% |
| InfoCision | Prison Fellowship Ministries | 1% |