## CHARLES H. NAVE, P.C.

601 MADISON STREET, SUITE 200  ALEXANDRIA, VA 22314-1756
TEL: 703.684.4665  FAX: 703.832.8988
CHARLIE@CHNPC.NET

December 4, 2003

Mailing Standards
US Postal Service
1735 N Lynn Street, Room 3025
Arlington, VA 22209-6038

Re: 3/13/00 Final Administrative Decision concerning Reese Brothers, Inc.

VIA CERTIFIED MAIL – 7003 1010 0005 4781 0599

Dear Sir or Madam,

I am writing to forward the enclosed letter to your office. The letter requests reconsideration of an earlier USPS decision regarding a postal deficiency in light of new USPS regulations.

As you can see, this letter was originally addressed to Ms. Sherry Suggs, Manager of Mail Preparations and Standards because she wrote the decision to be reconsidered. The letter was mailed three weeks ago but was recently returned to my office marked "RTS – Unknown." I am therefore forwarding the letter to your office so that her successor, or some other authorized party, may consider it.

Please contact me if you have any questions.

Charles H. Nave, P.C.
By:

*[signature]*

Charlie Nave, Esq.

CHARLES H. NAVE, P.C.

601 MADISON STREET, SUITE 200 ALEXANDRIA, VA 22314-1756
TEL: 703.684.4665 FAX: 703.832.8988
CHARLIE@CHNPC.NET

November 13, 2003

Ms. Sherry Suggs
Manager, Mail Preparation and Standards
475 L'Enfant Plaza, SW
Washington, DC 20260-2405

    RE: 3/13/00 Final Administrative Decision concerning Reese Brothers, Inc.

    VIA CERTIFIED MAIL – 7003 1010 0005 4768 7177

Dear Ms. Suggs:

    I now represent Reese Brothers, Inc. ("RBI") in its dispute with the USPS. As you may remember, this dispute began on June 1, 1998 when the Manager, Business Mail Entry, Pittsburgh, PA, assessed a revenue deficiency. This revenue deficiency was affirmed by the Northern Virginia Rates and Classification Service Center on March 1, 1999 and that decision was affirmed by you on March 13, 2000. I have enclosed a copy of this decision for your convenience.

    I am writing to respectfully request that you reconsider your decision in this matter in light of new postal regulations that have direct relevance to this case.

    On November, 13, 2003, new regulations went into effect at 68 Federal Register 58273-58276. These regulations amended Domestic Mail Manual § E670.5.3 to read:

> Exception: effective November 13, 2003 this standard no longer applies to mailings by an organization authorized to mail at Nonprofit Standard Mail rates soliciting monetary donations to the authorized mailer and not promoting or otherwise facilitating the sale or lease of any goods or service. This exception applies only where the organization authorized to mail at Nonprofit Standard Mail rates is given a list of each donor, contact information (e.g. address, telephone number) for each, and the amount of the donation or waives in writing the receipt of this list.

    This new exception applies perfectly to the RBI case:

- All of the disputed mailings were posted on behalf of organizations authorized to mail at nonprofit rates.
- All of the disputed mailings solicited monetary donations to the authorized mailer.

- None of the disputed mailings promoted or otherwise facilitated the sale or lease of any goods or services.
- Each authorized organization was given a list of donors, their contact information, and the amount of their donation.

I believe there is no dispute as to any of these facts. The issue, then, becomes one of fundamental fairness.

The deficiency was assessed against RBI because its contracts with its clients contained minimum fundraising guarantees mandated by various state laws. Earlier administrative decisions characterized these clauses as "no risk" guarantees and claimed they violated the cooperative mailing rule. However, the USPS never assessed postal deficiencies against any other fundraising professional or charitable organization because its contracts contained such clauses even though they are ubiquitous in the industry because they are required by various state laws. This new regulation means that RBI will be the only entity ever to be assessed a postal deficiency for making minimum fundraising guarantees even though minimum fundraising guarantees are pervasive throughout the fundraising community.

I understand that the new regulation is not retroactive. However, the USPS retains discretion to reconsider its opinion. Indeed, it would seem fundamentally unfair for the USPS to fail to reconsider its decision in this case in light of this new regulation.

In addition to the foregoing, the final administrative decision should be overturned because:

- The relationship test outlined in Publication 417 and elsewhere under which the relationship between a for-profit and non-profit entity is evaluated is unconstitutionally vague under the First Amendment and the Due Process Clause;
- The relationship test is unconstitutionally overbroad because it sweeps constitutionally protected solicitation speech into a commercial classification;
- The cooperative mail rule is an unconstitutional prior restraint of speech without the appropriate procedural safeguards;
- Because the relationship test disproportionately burdens the speech of smaller and less popular charities, it is an: unconstitutional content-based regulation of speech (both facially and as applied), an unconstitutional "time, place, or manner" regulation of speech (both facially and as applied); and unconstitutional under the equal protection clause (both facially and as applied);
- The statutory underpinnings of the cooperative mailing rule and the relevant legislative history indicate that Congress never intended for the cooperative mailing rule to apply to mail matter that does not improperly promote or advertise products or services;
- The USPS is using the cooperative mailing rule to indirectly exercise regulatory authority over telemarketing and charitable solicitations, two areas in which the USPS has no legitimate regulatory authority;
- The USPS final administrative decision was arbitrary and capricious because: the decision that the relationships between RBI and its clients were joint ventures rather than principal-agent relationships was contrary to the evidence and

implausible, because the USPS failed to review any sample mailpieces, because the USPS had never before indicated that state mandated minimum guarantees in contracts disqualified mail matter under the cooperative mailing rule, because the USPS never enforced this interpretation of the cooperative mailing rule against any entity other than RBI, because the USPS failed to produce the postal receipts on which it relied to calculate the deficiency or useful copies of the spreadsheets calculating the deficiency, because the deficiency apparently includes mailings that were not posted at the nonprofit rate or not posted by RBI, and because the USPS has never identified any mailing in the deficiency with any contract containing suspect terms or identified any offending contract terms with specificity.

I would also request that you review your prior decision in light of all of the arguments we have made above and all we have made previously, which are incorporated by reference and reasserted, because we believe that such a review in light of everything will lead you to a conclusion that this is the only fair way to proceed.

Thank you for your time and consideration.

Sincerely,

Charles H. Nave, Esq.


Enclosures:
    3/13/00 Final Administrative Decision

MAIL PREPARATION AND STANDARDS


UNITED STATES
POSTAL SERVICE

March 13, 2000

Mr. George E. Miller, Esq.
Nonprofit Service Group
1250 24th Street, NW, Suite 400
Washington, D.C. 20037-1124

Dear Mr. Miller:

The appeal of the March 1, 1999, decision by the Northern Virginia Rates and Classification Service Center (RCSC) upholding the revenue deficiency of $3,223.580.99 assessed against Reese Brothers, Inc. (RBI) by the Manager, Business Mail Entry, Pittsburgh, PA on June 1, 1998, was forwarded to this office for review. For the reasons stated below, the classification determination issued by the RCSC is being upheld.

RBI, a for-profit entity, is not authorized to mail at the Nonprofit Standard Mail (A) rates. RBI has used the Nonprofit Standard Mail (A) rate for its mailings in cooperation with various authorized nonprofit organizations. Generally, when a nonprofit and a for-profit organization enter into a cooperative business venture, mail generated by the cooperative business venture is not eligible for Nonprofit Standard Mail (A) rates.

The postal term "cooperative mailing" refers to mailings made at the Nonprofit Standard Mail (A) rates in which one or more of the parties "cooperate" with the authorized nonprofit organization. A cooperative mailing is defined as a mailing produced by an authorized organization that "cooperates" with one or more organizations to share the cost, risk, or benefit of the mailing. Under Section E670.5.1, *Domestic Mail Manual* (DMM), an organization that is authorized to mail at the Nonprofit Standard Mail (A) rates may only mail its own matter at those rates, and the organization may not delegate or lend the use of its authorization to mail at those rates to any other person or organization. For that reason, cooperative mailings that are made on behalf of or produced for any organization that is not itself authorized to mail at the Nonprofit Standard Mail rates, must be paid at the applicable rates.

Some of the crucial elements the Postal Service uses to analyze cooperative mail ventures are allocation of risk, division of profits and management control. Other factors we consider include identities of the parties who devised, designed, prepared and paid for the mailpiece, and the parties who directly or indirectly paid postage on the mailings. We must also consider how each cooperating party is compensated, how the profits and revenues are divided and the risks associated with the enterprise supported by the mailing are shared.

The contracts RBI provided relating to the postage deficiency bear evidence of the type of cooperative venture that is not authorized to mail at Nonprofit Standard Mail (A) rates. This is especially true when considering the allocation of risk and division of profits and management control between the parties. Each contract contains some form of "break-even guaranty," meaning RBI receives payment from its nonprofit clients only if its fundraising efforts on their behalf are successful. This is the essence of the type of cooperative venture that cannot enter its matter at the Nonprofit Standard Mail rate.

The March 1, 1999, decision letter issued by the RCSC addressed various issues raised on appeal. I concur with those responses and believe they were fully and accurately explained.

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-2405

This classification determination affords the process required by law, the same which is afforded to all similarly situated mailers. That law is set forth in DMM P011.5.0 (copy enclosed). This determination does not violate RBI's First Amendment rights. The Postal Service has never denied RBI access to the mailstream. It is being assessed the lawful rate for mail entered by its cooperative business ventures, the same rate charged all other similarly situated mailers. RBI's arguments regarding state law restrictions governing telemarketing and the lack of extraneous products contained in the mailpiece are not relevant to the Postal Service's determination of the mail classification issue that is the basis of the revenue deficiency assessed against it. Also, as RBI was advised, we are not aware of an established policy of the USPS that allows vendors, in certain circumstances, to share or absorb risk.

RBI also argued that the assessment is improper since it covers a period of time in excess of two years in violation of USPS policy, and is barred by the doctrines of laches and estoppel. RBI was advised that the collection of this revenue deficiency is governed by the June 16, 1989, USPS Management Instruction, "Collecting Revenue Deficiencies," which does not specify a time period limitation. RBI alleges this revenue deficiency is incorrect because it is based on calculations using postal rates that are "incorrect as a matter of fact," but does not specify which rates are incorrect. Based on the evidence submitted, there is nothing to support RBI's contention that the deficiency amount was not calculated correctly. This is the final agency decision on each of these issues.

As information, the Postal Service is clarifying its revenue assurance policies, including the procedures for assessment and collection of revenue deficiencies. The decision of this office is limited solely to consideration of the assessment; i.e., whether the mail classification ruling underlying the deficiency and calculation of the amount by which postage/fees have been underpaid are correct. Any final assessment is then referred to the district finance manager for a determination of the amount that should be collected.

In accordance with the procedures discussed above, by copy of this letter, I am referring this matter to George Lippert, District Finance Manager, Pittsburgh District, 1001 California Avenue, Pittsburgh, PA 15290-9995 for a decision concerning the amount of the assessment that should be collected. Please direct inquiries concerning the assessment to Mr. Lippert at 215-895-9050.

Sincerely,

Sherry Suggs
Manager

cc: Kathy Ainsworth, Allegheny Area Finance Manager
    George Lippert, Pittsburgh District Finance Manager
    Manager, Northern Virginia RCSC
    Donald Shellenberger, U.S. Postal Inspection Service
    Christine M. Taylor, Law Department
    Manager, Business Mail Entry, Pittsburgh, PA
    RCSC Managers

PPD:MPS:EStein:14448 Reese Brothers, Inc.