decision documents published on or after February 6, 1991.

* * * * *

§ 217.20 [Removed]

3. Remove § 217.20.

Dated: September 6, 1991.

George M. Leonard,

*Associate Chief, Forest Service.*

[FR Doc. 91-22097 Filed 9-12-91; 8:45 am]

BILLING CODE 3410-11-M

---

**POSTAL SERVICE**

**39 CFR Part 111**

**Eligibility Requirements for Certain Special Bulk Rate Third-Class Mail**

**AGENCY:** Postal Service.

**ACTION:** Final rule.

**SUMMARY:** This notice adopts a proposed rule which was published with an invitation to comment in the Federal Register on March 19, 1991. It amends the regulations of the Postal Service governing the eligibility requirements for mail to be sent at the special bulk third-class rates of postage, and the administration of these requirements. The purpose in amending the regulations is to implement new subsections (j) and (k) of 39 U.S.C. 3626, signed into law as part of the 1991 Postal Service Appropriations Act on November 5, 1990.

**EFFECTIVE DATE:** September 13, 1991.

**FOR FURTHER INFORMATION CONTACT:**
Jerome M. Lease, Office of Classification and Rates Administration, U.S. Postal Service, at (202) 268-5188.

**SUPPLEMENTARY INFORMATION:** The purpose of this rulemaking is to implement the provisions in 39 U.S.C. 3626 (j) and (k), which were enacted on November 5, 1990, as part of the Postal Service Appropriations Act of 1991 (Pub. L. 101-509, title II). Proposed rules were published on March 19, 1991. 56 FR 11537. The deadline for submitting comments on the proposal was April 18, 1991, but was extended until May 20, 1991, at the request of parties who expressed interest in providing comments. All comments received have been considered, including one which was received several days after the May 20 deadline.

The Postal Service received a total of 30 comments on the proposed rule. A number of commenters expressed their support for the intent of the legislation and the Postal Service's efforts to restrict commercial uses of special bulk third-class mail, some suggesting the need to restrict further what may be mailed at the special bulk third-class rates. Other expressed concerns that the new rules as proposed may go too far, hindering the legitimate fundraising efforts of nonprofit organizations, or exceeding the expressed intent of Congress as stated in the legislation on which the proposed regulations are based.

In the establishment and administration of eligibility requirements for special bulk third-class matter, the Postal Service adheres to the expressed intend of Congress. The mail which is eligible for the special rates is matter specified by Congress for that privilege, and Congress appropriates funds to subsidize those rates. 39 U.S.C. 2401(c), 3626(a). Accordingly, the goal of the Postal Service is to accept at the special rates only the matter identified by Congress as eligible for those rates, while denying those rates to matter which has not been identified as entitled to the subsidy.

Accordingly, arguments that the Postal Service should have gone further in its rulemaking, e.g., prohibit mailings of all solicitations at the special rates, are misplaced here. The Postal Service seeks only to implement the policies set out by Congress, and will accept mail at the special rates as long as Congress appropriates funds to subsidize that matter. Similarly, assertions that the statutes are too restrictive cannot govern Postal Service actions. If Congress restricts the types of matter it chooses to subsidize, the Postal Service must administer the rates in accordance with what desire. Thus, the issue here is the implementation of rules which adhere to the eligibility requirements set out by Congress, rather than the implementation of standards, however desirable one may argue them to be, that are beyond or outside of those laws.

Approximately half of the 30 commenters expressed as a general theme an objection to the Postal Service's statement in the proposal that it considers the new regulations to be supplementary to existing regulations which prohibit improper cooperative mailings at the special bulk third-class rates.

Referring to arrangements where the vendor or other for-profit organization bears some or all of the "risk" in a travel or insurance program, these commenters assert that, with respect to such programs, the continued use of established criteria for determining eligibility of mail matter to be sent at the special rates is not in accordance with the desires of Congress. Accordingly, the commenters assert that the Postal Service should consider only the new criteria expressly stated in the new law in determining whether a mailing involving either travel or insurance programs is eligible for the special rates.

After careful review of the comments and the legislation, the Postal Service remains of the opinion that the new rules are supplementary to the existing rules that a qualified nonprofit organization may mail only its "own" matter at the special rates, and may not send matter "in behalf of or produced for" an ineligible person or organization. These criteria have been upheld in Federal court as a valid rule limiting the use of the special rates to the material Congress intended to subsidize under 39 U.S.C. 3626. *National Retired Teachers Association* v. *United States Postal Service,* 593 F.2d 1360 (DC Cir. 1979), *affirming* 430 F. Supp. 141 (D.D.C 1977). Indeed, the district court noted that these common sense restrictions prevent a nonprofit organization from acting as the special-rate mailing agent of a commercial enterprise, and stated that the failure to stop such practices "would have been an egregious breach of (the Postal Service's) statutory duty." 430 F. Supp. at 147. Nothing in the text or history of new section 3626(j) appears to be at odds with these existing criteria. Significantly, the legislation does not amend the existing subsections that were the basis for those rules, or provide any indication that the rules would not apply to certain mailings. Instead, the legislation simply added a further restriction to the existing laws, in the form of new subsection (j). The Service also notes as additional support of its position, that the Postal Rate Commission in its Report To The Congress: Third-Class Nonprofit Mail Study, PRC Docket No. SS91-1 (July 8, 1991), stated, at page 30 of that Report, that "we fully agree with the Service's position that the new regulations supplement longstanding postal regulations restricting cooperative mailings."

Consequently, the final rule which is adopted here will be considered by the Postal Service to be supplementary to existing regulations. However, the Postal Service intends to make further efforts to educate mailers concerning these regulations. Further comments concerning these matters are provided below in conjunction with the explanation regarding section 625.522.

A second general theme found in many of the comments concerned a perception that the Postal Service has authorized "the use of administrative subpoenas" and subjected mailers to penalties which were not contemplated by the enabling legislation. Concerns were expressed that the Postal Service

**46552** Federal Register / Vol. 56, No. 178 / Friday, September 13, 1991 / Rules and Regulations

should demonstrate "reasonable grounds" before requiring mailers to furnish files and records, and that a time frame should be established before "overly harsh consequences are invoked."

Rules requiring mailers to provide the documents needed to determine eligibility for special rates, and establishing sanctions for failing to do so, are necessary for the administration of mail classification provisions, including the provisions concerning special bulk third-class rates. These provisions are well within the general authority granted to the Postal Service. See, e.g., 39 U.S.C. 401(2), (10), 403(a), (c), 404(a)(2). The provisions questioned here are largely patterned after existing rules which permit the Postal Service to seek necessary information from mailers, and provide sanctions for any failure to provide the requested information. See, e.g., DMM 148.2, 423.162, and 626.33. The Postal Service is not aware of any serious uncorrected incidents of abuse of these provisions, nor does it expect such abuses to occur. Each of these provisions requires the exercise of sound administrative discretion, and the Postal Service expects its mail classification officials to use good judgment in utilizing all of these provisions. Thus, it expects that mailers will be given adequate time to respond to requests, and that before any sanctions are levied, mailers will be warned of the need to supply the requested information and the consequences of a refusal. Sanctions will not be imposed on the mailer in circumstances where information cannot be supplied for reasons beyond the mailer's control. Finally, while the Postal Service expects that the reasons underlying information requests will generally be obvious, there is no reason why mailers cannot request, and receive, an explanation why a request has been made where the purpose is not as apparent.

Seven commenters were concerned with regard to the treatment of "space advertisements" in periodicals and other publications produced by authorized nonprofit organizations, in view of the ban on special bulk third-class rates being used for the entry of material which "advertises, promotes, offers, or for a fee or consideration, recommends, describes, or announces the availability of" certain financial, travel, and insurance programs. As discussed above, the Postal Service believes that it has little discretion to decide what may be mailed at the special rates. The new statute explicitly prohibits certain types of advertisements from being mailed at the special bulk third-class rates. While it enacts certain exceptions, as set forth in new section 3626(j)(2), there is no exception made for space advertisements. The Postal Service notes too that such an exception was contained in early drafts of the statute, but was excluded from the statute as enacted. Accordingly, while the arguments made may have some logical appeal, the Postal Service must follow the standard set forth in the statute. Therefore, with the exception of permissible references under new section 625.523, advertisements for materials prohibited from the special rates under § 625.522, including space advertisements, will not be allowed in periodicals and other publications mailed at the special bulk third-class rates by authorized nonprofit organizations.

After giving full consideration to the comments received, the Postal Service believes it is appropriate to adopt, with minor revisions, the proposed changes in eligibility requirements at this time. As explained below, however, some sections of the new regulations will require further rulemaking in order to clarify their intent. Such rulemaking will follow shortly after the publication of these final rules. Further, the Postal Service has determined that the public interest requires that these regulations be effective immediately. The rules are necessary to implement a statute, which was intended to reduce the level of appropriations for revenue forgone. The Postal Service believes that there is little danger of surprise or prejudice to mailers in these final rules, since they are based on statutory provisions and the Postal Service provided an extended period for comments. Finally, the Postal Service understands that some mailers have been reluctant to submit mailings at the special rates until final rules are adopted. The immediate implementation of these rules should benefit these mailers.

**Evaluation of Comments Received Regarding Specific Sections of the Proposed Regulations**

*Section 148.2 Appeal of Ruling (Revenue Deficiency)*

There were no specific comments regarding the proposed change to this section, although one comment favored the new provisions of related section 625.526, which provides an additional level of administrative review on appeals of revenue deficiency assessments under DMM 625.

*Section 625.522 Nonpermissible Mailings*

As described above, some of the comments asserted that, with respect to travel and insurance advertising, the Act's restrictions replace the test set forth in the cooperative mailing rules. (Since the Act and this new section prohibit entirely credit card advertising at the special rates, the application of current rules is moot.)

Regarding the application of the cooperative mailing rule, other commenters objected to considering which party bears the commercial or financial "risk" in the venture supported by the mailing.

For the reasons previously explained, the Postal Service reaffirms its view that the new rules supplement existing regulations. The Service stresses, however, that any understanding that the Postal Service would invariably consider a mailing ineligible for special rates if a for-profit entity incurs any of the "risk" in a venture supported by the mailing improperly interprets past postal rulings. The allocation of commercial or financial "risk" in a venture is an extremely useful, but not necessarily a fool-proof, way to distinguished between a mailing which promotes a nonprofit organization's own activity, and one which is merely sent on behalf of a for-profit enterprise. These decisions are made on a case-by-case basis, with each turning on its particular facts. It is conceivable, depending upon the circumstances of a case, that a finding that a for-profit entity incurs "risk" in a venture would not prohibit matter from being mailed at the special rates. For example, to use a hypothetical suggested by some commenters, a travel mailing would not become ineligible for the special rates simply because a travel vendor added the nonprofit organization making the mailing to its general liability policy (presumably, thereby incurring risk). Depending of course on the remaining circumstances, this fact, in and of itself, would not necessarily demonstrate that the mailing was ineligible for the special rates. However, the Postal Service intends to make further efforts to educate mailers concerning these regulations.

One commenter proposed adding punctuation and numbers to section 025.522(c) in order to clarify the intent of that section. We believe that such changes are not necessary and should not be adopted. It was also suggested that clarifying language might be added if, as this commenter understood, this section would not prohibit mere mention in newsletters, publications, etc., of such

Case 1:06-cv-00434-RMU    Document 1-21    Filed 03/09/2006    Page 3 of 5

travel as day trips to theatres and shopping excursions for the benefit of members. The Postal Service believes that this additional clarification is not needed since new section 625.523 will make clear that some references to travel will not, in and of themselves, disqualify materials mailed at the special rates.

A number of commenters asserted that provisions of section 625.522(b) need to be clarified to define examples of eligible insurance mailings where it is determined that the "coverage provided by the policy is not generally otherwise commercially available." The Service agrees that further rules may be useful to clarify this area and will not follow this rule with a new rulemaking which will attempt to define eligible insurance mailings.

### Section 625.523 Permissible References to Commercial Products or Organizations

Four commenters expressed concern that the wording of this section of the proposed regulations is vague or "too narrowly drawn" to comply with Congress' intentions. The final rule follows more closely the wording of the Act. The changes entail two specific areas and in each case the Postal Service has concluded that the iminated language was unnecessary. First, the Postal Service eliminated the reference which limited the applicability of the section to cases arising under new section 625.522. The new rule states that a mailing will not be held cooperative solely on the basis of the specified references, but does not preclude consideration of such references along with other evidence in the course of such a decision. Since this rule essentially codifies past practice with respect to decisions under the existing cooperative mailing rule, it is unnecessary, if not confusing, to limit the applicability of section 625.523 to cases arising out of 625.522. Second, the Postal Service eliminated the use of the term "incidental reference" as a measurement of the amount of material subject to the exception. The statute and the final rule ensure that the publication of specified references will not be the primary objective of the mailers through consideration whether the piece is "primarily devoted" to that material.

### Section 625.524 Evidence

Fourteen commenters expressed a view that new section 625.524 gives the Postal Service "excessive and unregulated subpoena authority" to obtain records and files from nonprofit mailers. Some believed that without a "show cause" requirement, there would exist a potential for the harassment of nonprofit organizations. Several of these commenters were concerned about wording in the new section which would indicate that a nonprofit organization might be required to "cause evidence held by another party to be furnished to the Postal Service." Another concern was that the Postal Service exceeded its legislative mandate by including language in the regulation indicating that a nonprofit organization's authorization to mail at the special rates could be revoked for failure to furnish or cause to be furnished information requested in support of a mailing sent at the special rates.

The Postal Service has previously explained its conclusion that the proposed provisions are in accordance with general authority granted to the Postal Service and should be adopted. Moreover, the Service again emphasizes that sound judgment will be exercised in the administration of this authority, much as is done in conjunction with similar authority in other classification procedures.

There are two aspects of the proposed rule which build upon existing regulations. The first is the requirement that permitholders cause relevant evidence held by another party to be furnished to the Postal Service upon request. The Postal Service considers this requirement to be eminently reasonable. The mailings in issue are generally made in connection with one or more other parties. Moreover, relevant evidence concerning the permitholder may be held by the Internal Revenue Service or other organizations. Postal Service efforts to ensure that only eligible matter is mailed at the special rates would be hindered if evidence could be shielded merely by "parking" it with a party other than the permitholder. This rule requires permitholders to make a good faith effort to cause such evidence to be turned over to the Postal Service.

Revoking a permitholder's authorization for failure to provide information also expands upon existing rules, but is reasonable in the view of the Postal Service. The Service's fulfillment of its statutory duties requires reviewing the eligibility of matter to be mailed at the special rates. If an organization continuously thwarts such efforts, by refusing to provide evidence or cause others to do so, and thereby deprives the Postal Service of the means to determine whether its matter is eligible to be mailed at the special rates, it is appropriate to deny the organization the future use of such rates. As explained previously, the Postal Service intends to utilize sound discretion in administering these rules. This will ensure that mailers are not punished for actions of others that are beyond their control, that mailers are aware of the consequences of refusing to provide information and are given adequate time to comply, and that revocation will be used only where no other remedy is adequate.

### Sections 625.525, 625.526, and 625.527

Four commenters specifically discussed sections 625.525, .526, and .527. One suggests that the Postal Service lacks statutory authority to hold parties, other than the nonprofit organizations making the mailings, liable for deficiencies caused by an ineligible mailing sent at the special rates. Two commenters were concerned that the new regulations may be used to hold commercial firms responsible for deficiencies incurred as a result of mailings. One suggests that the Postal Service must ensure due process is afforded third-party organizations which might be held liable for a deficiency under these sections. The other believes that this provision is "grossly unfair." As stated above, the new statute (39 U.S.C. 3626(k)(2)), permits assessments against any person or organization that mailed, or caused to be mailed, ineligible matter at the special rates. No exception is made for commercial organizations. Nevertheless, the Postal Service notes that all parties assessed under these rules, including commercial firms, are entitled to the same procedures including an initial assessment and appeal procedures. The Postal Service notes the new additional level of administrative review on appeals in these cases, and believes that this will help to ensure that a nonprofit organization or a commercial firm against which a cooperative mailing deficiency is assessed will have an adequate opportunity to present its arguments.

Finally, the Postal Service is urged by one commenter to use "discretion" invoking the authority expressed in new section 625.527 to collect unpaid deficiencies after administrative appeals have been exhausted. The Postal Service intends to exercise such discretion. Indeed, the regulation requires that the authority not be used for at least 30 days in order to provide the party an opportunity to pay the assessment. Nevertheless, it must be emphasized that the Postal Service has a duty to collect all debts owed to it, and will utilize the authority set forth in section 625.527 when necessary. This commenter also was concerned that

625.527 was constructed in such a way that the Postal Service may reach back further than Congress intended when accessing postage accounts. The Postal Service believes that Congress clearly intended to allow the Postal Service to use the specified procedures to collect twelve months' worth of debts owed on cooperative mailings if other administrative remedies have been exhausted but a deficiency remains unpaid. This should not be defeated by the need to collect evidence to assess the deficiency and decide appeals, particularly since the mailer may be able to slow that process by delaying to provide requested information.

List of Subjects in 39 CFR Part 111

Postal Service.

In view of the reasons discussed above, the Postal Service hereby adopts, with revisions, the following amendments to the Domestic Mail Manual, which is incorporated by reference in the Code of Federal Regulations (see 39 CFR 111.1).

PART 111—[AMENDED]

1. The authority citation for 39 CFR part 111 continues to read as follows:

Authority: 5 U.S.C. 552(a); 39 U.S.C. 101, 401, 403, 404, 3001–3011, 3201–3219, 3403–3406, 3621, 5001.

2. Parts 148 and 625 of the Domestic Mail Manual are revised to read as follows:

PART 48—REVENUE DEFICIENCY

* * * * *

148.2 Appeal of Ruling Except as provided in 625.526, a mailer may appeal a ruling assessing a revenue deficiency by filing a written appeal, within 15 days of receipt of the ruling, with the general manager, rates and classification center (RCC), for the entry post office. [REMAINDER OF TEXT UNCHANGED]

* * * * *

PART 625—ADDITIONAL CONDITIONS FOR SPECIAL BULK RATES ELIGIBILITY

* * * * *

625.5   What May be Mailed

* * * * *

625.52   Cooperative Mailings

625.521   General. Cooperative mailings may be made at the special bulk rates only when each of the cooperating organizations is individually authorized to mail at the special bulk rates at the post office where the mailing is deposited. Cooperative mailings involving the mailing of any matter in behalf of or produced for an organization not itself authorized to mail at the special bulk rates at the post office where the mailing is deposited must be paid at the applicable regular rate. If a mailer disagrees with a postmaster's decision that the regular rate of postage applies to a particular mailing, it may appeal the decision in accordance with 133. (See Form 3602–N, *Statement of Mailing with Permit Imprints*, or Form 3602–PC, *Statement of Mailing with Meter or Precanceled Postage Affixed*, for the certifications required of special bulk-rate mailers for mailings made under this section.)

625.522   Nonpermissible Mailings. Except as provided in 625.523, special bulk third-class rates shall not be used for the entry of material which advertises, promotes, offers, or for a fee or consideration, recommends, describes, or announces the availability of any of the following:

a. Any credit, debit, or charge card or similar financial instrument or account, provided by or through an arrangement with any person or organization not authorized to mail at the special bulk third-class rates at the entry post office.

b. Any insurance policy, unless the organization which promotes the purchase of such policy is authorized to mail at the special bulk rates at the entry post office; the policy is designed for and primarily promoted to the members, donors, supporters, or beneficiaries of that organization; and the coverage provided by the policy is not generally otherwise commercially available.

c. Any travel arrangement, unless the organization which promotes the arrangement is authorized to mail at the special bulk rates at the entry post office; the travel contributes substantially (aside from the cultivation of members, donors, or supporters, or the acquisition of income or funds) to one or more of the purposes which constitute the basis for the organization's authorization to mail at the special bulk rates; and the arrangement is designed for and primarily promoted to the members, donors, supporters, or beneficiaries of that organization.

625.523   Permissible Reference to Commercial Products or Services, and Organizations or Individuals

An authorized nonprofit organization's material will not be disqualified from being mailed at the special rates solely because that material contains, but is not primarily devoted to:

a. Acknowledgments of organizations or individuals who have made donations to the authorized organization; or

b. References to and a response card or other instructions for making inquiries concerning services or benefits available as a result of membership in the authorized organization, provided that advertising, promotional, or application materials specifically concerning such services or benefits are not included.

625.524   Evidence. Upon request, an organization authorized to mail at the special bulk rates shall furnish evidence to the Postal Service, or cause evidence held by another party to be furnished to the Postal Service, concerning the eligibility of any of its mail matter or mailings to be sent at those rates. Any failure to furnish evidence necessary for a ruling on the eligibility of matter to be sent at the special rates, or to cause such evidence to be furnished, will be a sufficient basis for a finding that the matter is not eligible for the special rates, as well as for the revocation of the organization's authorization to mail at the special rates.

625.525   Other Restrictions. No person or organization shall mail, or cause to be mailed by contractual agreement or otherwise, any ineligible matter at the special rates.

625.526   Revenue Deficiency and Appeal Procedure. A revenue deficiency may be assessed in the amount of the unpaid postage against any person or organization that mailed, or caused to be mailed, ineligible matter at the special bulk third-class rates in violation of 625.523. That party may appeal the decision in writing within 30 days to the postmaster at the post office where the mailing was entered. The postmaster will forward the appeal to the general manager of the rates and classification center (RCC) (see 132), who will issue the initial agency decision on the appeal. The decision of the general manager will become final unless the party against whom the deficiency was assessed appeals it in writing within 30 days to the Director, Office of Classification and Rates Administration, who will issue the final agency decision. If the general manager of an RCC issues the initial decision assessing the revenue deficiency, the initial decision on the appeal will be made by the General Manager of the Business Requirements Division, Office of Classification and Rates Administration. The decision of the General Manager, Business Requirements Division, will become final unless the party against whom the deficiency was assessed appeals it in writing within 30 days to

the Director, Office of Classification and Rates Administration, who will issue the final agency decision. If a general manager of any division within the Office of Classification and Rates Administration issues the initial decision assessing the revenue deficiency, the initial decision on the appeal will be made by the Director of the Office of Classification and Rates Administration. The decision of the Director will become final unless the party against whom the deficiency was assessed appeals it in writing within 30 days to the Senior Assistant Postmaster General, Marketing and Customer Service Group, who will issue the final agency decision.

625.527  Collection. Any deficiency assessed under 625.526 which is found to be due and payable to the Postal Service following the issuance of a final agency decision must be paid promptly. If the Postal Service does not receive payment within 30 days, the amount of that deficiency incurred within twelve (12) months of the date of the final mailing upon which the deficiency was assessed may be deducted from any postage accounts or other monies of the violator in the possession of the Postal Service.

* * * * *

A transmittal letter making these changes in the Domestic Mail Manual ill be published and transmitted automatically to subscribers. Notice of issuance of the transmittal letter will be published in the Federal Register as provided by 39 CFR 111.3.

Stanley F. Mires,
*Assistant General Counsel, Legislative Division.*

[FR Doc. 91-22107 Filed 9-12-91; 8:45 am]
BILLING CODE 7710-12-M

---

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Part 52**

[OR6-1-5247; FRL-3993-6]

**Approval and Promulgation of Implementation Plans: Oregon**

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Final rule.

**SUMMARY:** EPA today approves amendments to the State of Oregon Air Quality Control Program, submitted by the Oregon Department of Environmental Quality (ODEQ) on February 17, 1989 as a revision to the Oregon state implementation plan (SIP). These amendments are to the Procedures for Issuance, Denial, Modification, and Revocation of Permits (OAR 340-14-007, -010, -020, and -025), Air Contaminant Discharge Permit Notice Policy (OAR 340-20-150), and the New Source Review Procedural Requirements (OAR 340-20-230). In addition, EPA is approving an amendment to the rules for Notice of Construction and Approval of Plans (OAR 340-20-030) which was submitted on September 14, 1989. EPA is approving these amendments because the changes improve the public participation in the ODEQ's permitting procedures.

**DATES:** This action will be effective on November 12, 1991 unless notice is received before October 15, 1991 that someone wishes to submit adverse or critical comments. If such notice is received, EPA will open a formal 30-day comment period.

**ADDRESSES:** Documents which are incorporated by reference are available for public inspection at the Public Information Reference Unit, Environmental Protection Agency, 401 M Street, S.W., Washington, DC. Copies of material submitted to EPA may be examined during normal business hours at the following locations:

Public Information Reference Unit, Environmental Protection Agency, 401 M Street, SW., Washington, DC 20460.
Air & Radiation Branch, Environmental Protection Agency, Docket # OR6-1-5247, 1200 Sixth Avenue, AT-082, Seattle, Washington 98101.
State of Oregon, Department of Environmental Quality, 811 SW., Sixth, Portland, Oregon 97204.

Comments should be addressed to.
Laurie Kral, Air & Radiation Branch, AT-082, Environmental Protection Agency, 1200 Sixth Avenue, Seattle, Washington 98101.

**FOR FURTHER INFORMATION CONTACT:**
David C. Bray, Air & Radiation Branch, AT-082, Environmental Protection Agency, 1200 Sixth Avenue, Seattle, Washington 98101. Telephone: (206) 553-4253, FTS: 399-4253.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

On February 17, 1989, the Oregon State Department of Environmental Quality (ODEQ) submitted amendments to their State of Oregon Air Quality Control Program. These amendments to the Procedures for Issuance, Denial, Modification, and Revocation of Permits (OAR 340-14-007, -010, -020, and -025), Air Contaminant Discharge Permit Notice Policy (OAR 340-20-150) and New Source Review Procedural Requirements (OAR 340-20-230) revised the public participation procedures for proposed permit actions.

The revisions clarify the procedures for submittal of public comments on proposed permits, the criteria for ODEQ decisions regarding public hearings on proposed permits, and the content of the public notice for proposed permits. The revisions also make several administrative and cleanup changes.

In addition, the ODEQ, on September 14, 1989, submitted an additional amendment to their State of Oregon Air Quality Control Plan. This amendment to the rules for Notice of Construction and Approval of Plans (OAR 340-20-030) delegates the authority to issue an order prohibiting the construction, installation, or establishment of new sources of air contamination from the Environmental Quality Commission (EQC) to the Director of the Department of Environmental Quality (ODEQ).

EPA has reviewed these amendments and finds that they comply with EPA's public participation requirements as set forth in 40 CFR 51.161 and 51.166 (q).

**II. EPA Action**

Today EPA approves amendments to the Procedures for Issuance, Denial, Modification and Revocation of Permits; the Air Contaminant Discharge Permit Notice Policy; the New Source Review Procedural Requirements; and the Notice of Construction and Approval of Plans as revisions to the State of Oregon Implementation Plan. Specifically, EPA is approving revisions to OAR 340-14-007; OAR 340-14-010(3); OAR 340-14-020(1), (4)(b), and (5); OAR 340-14-025(2) through (6) OAR 340-20-150; OAR 340-20-230(3)(D); and OAR 340-20-030(4)(a).

**III. Administrative Review**

The public should be advised that this action will be effective 60 days from the date of publication in the Federal Register. However, if notice is received within 30 days of publication that someone wishes to submit adverse or critical comments on any or all of these revisions approved herein, the action on these revisions will be withdrawn and two subsequent notices will be published before the effective date. One notice will withdraw the final action on these revisions and another will begin a new rulemaking by announcing a proposal of the action on these revisions and establish a comment period.

Nothing is this action should be construed as permitting or allowing or establishing a precedent for any future request for revision to any State implementation plan. Each request for revision to the State implementation plan shall be considered separately in