IN THE UNITED STATES DISTICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REESE BROTHERS, INC.,<br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES POSTAL SERVICE<br>    Defendant/<br>    Counterclaim Plaintiff,<br><br>    v.<br><br>REESE TELESERVICES, INC., and<br>RESOURCES GROUP, LLC d/b/a<br>TGR HOLDINGS, INC.,<br>    Counterclaim Defendants. | Civil Action No. 06-CV-00434 (RMU) |

**<u>PLAINTIFF'S MEMORANDUM OF LAW REGARDING
STANDING TO LITIGATE CONSTITUTIONAL CLAIMS</u>**

COMES NOW the Plaintiff, Reese Brothers, Inc. ("RBI"), by and through its undersigned counsel, and, pursuant to this Court's Memorandum Order Ordering the Plaintiff to Show Cause Why Its Constitutional Claims Should Not Be Dismissed ("Standing Order" a/k/a Document 31), files its Memorandum of Law Regarding Standing to Litigate Constitutional Claims.

**I.  Introduction**

RBI's Complaint alleges that the United States Postal Service ("USPS") improperly assessed a postal deficiency against RBI and brings seventeen causes of action.  Ten of these causes of action are constitutional claims.  Because these constitutional claims assert the rights of RBI's nonprofit clients, the Court has ordered RBI to show cause why the constitutional claims should not be dismissed for lack of standing.

## II.  Factual Background

For the purposes of adjudicating the standing of RBI, the Court is obligated to assume the accuracy of the facts as pled.  *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980) (holding that "[f]or purposes of standing we must accept a party's well-pleaded allegations as valid").  RBI is a formerly operating for-profit telemarketing company.  Compl. ¶ 9.  While in operation, RBI contracted with various nonprofit clients to provide them with telemarketing solicitation and direct mail consulting services.  *Ibid.*  As part of the fundraising operation, the nonprofit clients posted letters to donors at the Nonprofit Standard Rate.  Compl. ¶ 10.  Following an investigation into the relationship between RBI and its nonprofit clients, the USPS, in 1998, charged RBI with improperly availing itself of the discounted postage rates available only to non-profit entities and for-profit entities acting as agents of non-profit entities.  Comp. ¶ 14.  The USPS concluded that the contractual agreement between RBI and its nonprofit clients rendered the mailings ineligible for the discounted postage rates.  Compl. ¶ 16.

In response to the alleged under-payments (representing the differences between the nonprofit postage rate and the standard postage rate), the USPS sought to collect postal deficiencies totaling $3,600,068.23.  Compl. ¶¶ 14, 20.  Further, the USPS denied RBI's nonprofit clients the use of their nonprofit postal permits and these nonprofit clients were compelled to post mail at the higher standard rate as long as they remained RBI clients.  Compl. ¶ 34.  Pursuant to USPS regulations, RBI requested that the difference between the nonprofit rate and the standard rate be held in a deposit arrangement so that the excess postage could be refunded upon a successful appeal.  Compl. ¶ 23.  Over time, RBI's nonprofit clients left RBI and engaged other fundraisers so they could again use their nonprofit postage permits.  Their

departure from their relationship with RBI was a direct result of the USPS actions. Compl. ¶¶ 34-35.

On March 9, 2006, RBI filed the Complaint in this case seeking to set aside the postal deficiencies, refund the money paid into the deposit arrangement, and other relief. Compl. ¶¶ 56-60. The first ten causes of action in the Complaint allege violations of constitutional rights. The Court, unsure of RBI's standing to litigate these constitutional claims, ordered RBI to show cause why the Court should not dismiss them. Standing Order, p. 3.

### III.  Argument

RBI has standing to assert the constitutional claims because it is an injured party, because its injuries are traceable to USPS actions, because the relief requested will redress its injuries, and because, as a fundraiser, it has *jus tertii* standing to assert the constitutional claims of its nonprofit clients whose rights were abridged by USPS conduct in assessing and upholding the postal deficiencies.

### *Standing as an Injured Party*

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999). The primary injuries RBI has suffered are the assessment of postal deficiencies totaling $3,600,068.23 and the loss of its clients. Compl. ¶¶ 14, 20, 34.

Second, the injury must be fairly traceable to the governmental conduct alleged. *Byrd*, 174 F.3d at 243. These injuries are directly attributable to USPS actions. The postal deficiencies themselves are USPS actions. Comp. ¶¶ 14, 20. RBI's loss of clients is directly attributable to

the USPS's decision to deny RBI's nonprofit clients use of their respective nonprofit postal permits while they operated with RBI. Compl. ¶ 34.

Third, it must be likely that the relief requested will address the alleged injury. *Byrd*, 174 F.3d at 243. To redress the injury caused the postal deficiencies, RBI has requested that this Court set aside the postal deficiencies and the decisions upholding them. Compl. ¶ 59. To redress the loss of funds paid into the deposit arrangement and the lost business, RBI has requested that this Court order the USPS to refund the excess postage paid into the deposit arrangement and to pay damages for RBI's lost business. Compl. ¶¶ 56-57.

A further requirement for standing is that a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). *See also Allen v. Wright*, 468 U.S. 737, 751 (1984). There are, however, significant exceptions to this rule.

### *Standing to Litigate Constitutional Claims – In General*

Federal courts have long recognized that Constitutional rights require a certain "breathing space" to be adequately protected. *Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973). One way to provide for that breathing space is to allow litigants to assert the constitutional claims of others,[1] even when the litigant himself would not enjoy the same constitutional protection. *See, e.g., Bigelow v. Virginia*, 421 U.S. 809, 816 (1975) (holding that "this 'exception to the usual rules governing standing' reflects the transcendent value to all society of constitutionally protected expression"). *See also Gooding v. Wilson*, 405 U.S. 518, 521 (1972) (holding that allowing third party standing is "necessary because persons whose expression is constitutionally

---

[1] There is no doubt that the charitable solicitations engaged in by RBI's nonprofit clients with RBI's assistance were fully protected speech. *Riley v. National Fed'n of the Blind of N.C.*, 487 U.S. 781, 789 (1988).

protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression.")

There are numerous cases that carve out exceptions to the standing rules outlined in *Warth* and *Allen*. These cases provide for *jus tertii* or "third party" standing to litigate the types of constitutional claims raised by RBI in the Complaint, even when the litigant himself does not enjoy the constitutional protections invoked by those claims. *See, e.g., Bigelow v. Virginia*, 421 U.S. 809, 815 (1975) (noting that "this Court has recognized that a defendant's standing to challenge a statute on First Amendment grounds as facially overbroad does not depend upon whether his own activity is shown to be constitutionally privileged"); *Broadrick v. Oklahoma*, 403 U.S. 601, 612 (1973) (holding that "litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"); *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972) (holding that third-party has standing to challenge law as overbroad even though the third-party had not even claimed that the ordinance punished his own expressive activity); and *Gooding v. Wilson*, 405 U.S. 518, 521 (1972) (holding that "'although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others'" (citations omitted)).[2]

---

[2] N.B. The courts have recognized third party standing to litigate each of the types of constitutional causes of action raised by RBI in its complaint. Third party standing for a vagueness claim (such as Compl. count I) has been recognized in *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972) and *Gooding v. Wilson*, 405 U.S. 518, 521 (1972). Third party standing for overbreadth claims (such as Compl. counts II and III) has been recognized in *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) and *Bigelow v. Virginia*, 421 U.S. 809, 815 (1975). Third party standing for a prior restraint claim (such as Complaint count IV) has been

The eligibility test for *jus tertii* standing is set forth in *Sec'y of Md. V. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) which provides that "the court considers whether the third party has sufficient injury-in-fact to satisfy the Art. III case-or-controversy requirement, and, whether, as a prudential matter, the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." Coincidentally, the facts of the *Munson* case relevant to the standing issue are materially identical to the facts in the instant case.

In *Munson*, the plaintiff was a "professional for-profit fundraiser" just as RBI is a for-profit fundraiser. *Munson*, 467 U.S. at 950 and Compl. ¶ 9.

The *Munson* plaintiff faced "civil restraint and criminal liability" imposed by the Secretary of State because of certain terms appearing in the fundraising contracts between it and its nonprofit clients. *Munson*, 467 U.S. at 954. The *Munson* plaintiff suffered injury because one of its potential clients "was reluctant to enter into a contract" because of the Maryland law at issue. *Munson*, 467 U.S. at 954-55. Similarly, the USPS, objecting to terms appearing in RBI's fundraising contracts, assessed $3,600,068.23 in postal deficiencies against RBI and denied RBI's nonprofit clients the right to enter mail at the nonprofit rate while they remained RBI clients. Compl. ¶¶ 14, 20, 34. This had the clear effect of unconstitutionally limiting their ability to disseminate their messages. *Speiser v. Randall*, 357 U.S. 513, 518 (1958). Eventually,

---

recognized in *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). Third party standing has been recognized for "a litigant whose own activities are unprotected [but who] may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980). Such blanket approval for third party standing for First Amendment claims would certainly encompass claims such as Compl. counts V, VI, VII, and VIII. Indeed it would encompass Compl. counts I-IV as well. Finally, the Supreme Court has also recognized third party standing to litigate equal protection claims (such as Compl. counts IX and X) at *Craig v. Boren*, 429 U.S. 190, 193-94 (1976).

RBI's clients switched to other fundraisers so they could again avail themselves of the nonprofit postage rate. Compl. ¶ 34.

The *Munson* plaintiff was "not a charity and [did] not claim that its own First Amendment rights [had] been or [would be] infringed by the challenged statute." *Munson*, 467 U.S. at 955. Rather, the Munson plaintiff was focusing "its argument solely on its ability to assert the First Amendment right of Maryland charities." *Munson*, 467 U.S. at 955 n. 6. Similarly, RBI is not a charity and is, for the purposes of showing standing to litigate these elements of its Complaint, asserting the constitutional rights of its nonprofit clients, not its own.[3] Compl. ¶¶ 39-48.

Because the facts relevant to standing in *Munson* and the instant case are materially identical, the application of the law to the facts in this case should be consistent with the result in *Munson*. In *Munson*, the court observed that the plaintiff lost a potential client because of the challenged law which gave rise to "sufficient injury-in-fact to satisfy the Art. III case-or-controversy requirement." *Munson*, 467 U.S. at 954-55. Because RBI has lost many actual clients because of the postal deficiencies levied by the USPS, RBI has also satisfied the case-or-controversy requirement. (See also discussion of "Standing as an Injured Party" beginning on page 3).

The *Munson* court then considered whether the plaintiff could "be expected satisfactorily to frame the issues in the case." *Munson*, 467 U.S. at 958. The Court reasoned that because

---

[3] RBI has refrained from arguing that its own Constitutional rights endow it with standing to challenge the USPS's actions in this case because such argument would be beyond the scope of response requested by the Standing Order. RBI does not concede that it has no basis to raise constitutional claims against the USPS's actions. Incidentally, the *Munson* court observed that "we have no occasion to address the extent to which Munson might assert its own First Amendment right to disseminate information as part of a charitable solicitation. It is clear that the fact that Munson is paid to disseminate information does not in itself render its activity unprotected." *Munson*, 467 U.S. at 955 n. 6 (citations omitted).

> the activity sought to be protected [fundraising] is at the heart of
> the business relationship between Munson and its [nonprofit]
> clients, and Munson's interests in challenging the statute are
> completely consistent with the First Amendment interests of the
> charities it represents … we see no prudential reason not to allow it
> to challenge the statute." *Ibid.*[4]

Likewise, because the fundraising activities in which RBI and its nonprofit clients were engaged was at the heart, if not *the* heart, of the business relationship between RBI and its nonprofit clients, and because RBI's interests in challenging the USPS's postal deficiencies are entirely consistent with the constitutional interests of its former clients, there is no prudential reason not to allow RBI to assert these constitutional claims. *See also Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (holding that "[g]iven a case or controversy, a litigant whose own activities are *unprotected* may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court" (emphasis supplied)).

### *Standing to Litigate Constitutional Claims – Individual Causes of Action*

---

[4] It is worthwhile to note that, contrary to footnote 3 of the Standing Order, there is *no* requirement in *Munson* that the plaintiff's "*constitutional* interests in challenging the statute are consistent with the constitutional interest of the third party whose rights it seeks to vindicate." (emphasis supplied)

Rather, the *Munson* court considered only (a) that the regulated activity was at the center of the business relationship between Munson and its clients and (b) "Munson's interests [*not* Munson's *constitutional* interests] in challenging the statute are completely consistent with the First Amendment interests of the charities it represents." *Munson*, 467 U.S. at 947. In fact, as noted previously, the *Munson* court went out of its way to point out that the plaintiff was "focusing its argument solely on its ability to assert the First Amendment rights of Maryland charities," rather than its own First Amendment rights. *Munson*, 467 U.S. at 955 n. 6.

To the extent that the *Munson* plaintiff had any of its own constitutional claims relevant to the standing discussion, RBI enjoys precisely the same rights because both RBI and the *Munson* plaintiff were both for-profit fundraisers being "paid to disseminate information" on behalf of nonprofit clients. *Ibid.*

The ten constitutional causes of action that RBI has alleged in the Complaint "properly … frame the [constitutional] issues and present them with the necessary zeal" because each one of them could have been brought by any of RBI's former nonprofit clients.[5]

Count I of the Complaint (¶39) alleges that the USPS's relationship test cooperative mailing regulations ("RTCMR") are unconstitutionally vague under the First Amendment. In short, the RTCMR are little more than a list of factors with no indication of how the factors are to be weighed to determine whether a mailing violates the RTCMR or not. It is impossible for RBI's nonprofit clients, or any other person of common intelligence acting on their behalf, to know in advance how the RTCMR would be applied to any particular nonprofit-fundraiser relationship. This opens the door to the USPS using unfettered discretion to make eligibility determinations which directly affects a nonprofit's right to solicit charitable contributions through the mail. In fact, that is exactly what happened to RBI's nonprofit clients, whose first amendment rights to disseminate their messages were unconstitutionally limited when the USPS applied the vague RTCMR to them and RBI. This was exacerbated when the USPS did not take similar action against other consultants and their clients thus favoring some fully protected speech over other such speech.

Count II of the Complaint (¶40) alleges that the RTCMR are unconstitutionally overbroad because they sweep constitutionally protected solicitation speech into a commercial classification without proper justification. The USPS promulgated and applied the RTCMR so

---

[5] Please note that, although the USPS assessed postal deficiencies only on RBI, the USPS also refused thenceforth to accept mail at the nonprofit rate for any of RBI's nonprofit clients. Compl. ¶ 34. Thus, the letters assessing deficiencies on RBI were actions not only against RBI but also against RBI's nonprofit clients in two ways. First, the USPS was essentially suspending the clients' nonprofit postal permits. Second, the USPS was indirectly assessing a postal deficiency on the nonprofits because liability for such postal deficiencies is joint and several among a nonprofit and its fundraiser. Domestic Mail Manual § 604.10.2.1

as to forbid posting charitable solicitation mailings, which are fully protected under the First Amendment, at the nonprofit rate when the nonprofit exercises its right to engage fundraising professionals.  This proscription produced a chilling effect on nonprofits' solicitation speech and makes the RTCMR highly vulnerable to selective enforcement by the USPS.  Indeed, the USPS selectively enforced the RTCMR against RBI's nonprofit clients (and against RBI), but not against other fundraising professionals and their nonprofit clients even though their contractual relationships were all materially identical.  Compl. ¶ 35.

Count III of the Complaint (¶41) alleges that the RTCMR are unconstitutionally overbroad because they unconstitutionally regulate speech that Congress did not intend to regulate in this manner.  In the plain language of 39 U.S.C. § 3626(j) and in the legislative history, Congress expressed a desire to exclude from entry at the nonprofit rate only mail matter that improperly promotes or advertises products or services.  In prior rulemakings and interpretations of other sub-sections of the same statute, the USPS has a history of taking what was a clear Congressional intent and elaborating its own overly broad view.  See, e.g., *Aid Ass'n for Lutherans v. United States Postal Service*, 321 F.3d 1166 (D.C. Cir. 2003).  The USPS's cooperative mailing rule regulations are found at Domestic Mail Manual ("DMM") § E670.5.4 and PS-138.  In promulgating regulations at Publication 417, Chapter 5, Customer Support Rulings PS-209 and PS-233 and elsewhere (which are all part of the broader RTCMR), the USPS did not limit the application of the RTCMR to mail matter improperly promoting or advertising products and services.  Rather, these regulations considered only the relationship between parties involved in producing a particular mailing.  In doing so, these RTCMR swept nonprofits' solicitation mail, speech that is fully protected by the First Amendment, under its ambit.  Thus the RTCMR had a chilling effect on nonprofits' solicitation speech and the RTCMR were used

by the USPS to selectively limit the constitutional rights of RBI's nonprofit clients to disseminate their messages.

Count IV of the Complaint (¶42) alleges that the USPS's withdrawal of RBI's nonprofit clients' rights to mail at the nonprofit was an unconstitutional prior restraint of speech.  When the USPS ruled that these nonprofits would no longer be able to use the lower rates to post constitutionally protected charitable solicitation mailings for the duration of their contracts with RBI, the USPS was essentially suspending the nonprofits' nonprofit mailing permits that allowed them to communicate with a broad audience through the postal system, a public communications forum (Greenberg v. Bolger, 497 F.Supp.756, 776 (E.D.N.Y. 1980)).  This suspension was not conducted according to narrowly drawn, reasonable, and definite standards so as to protect the nonprofits' free speech rights.  Further, before restraining the nonprofits' speech the USPS failed to bear the burden of showing that the speech was unprotected, obtain a prompt and final judicial determination of the validity of the restraint, and secure an injunction.

Count V of the Complaint (¶43) alleges that the RTCMR are a facially unconstitutional content-based regulation of speech because the RTCMR discriminate between nonprofits producing their own solicitation materials and nonprofits that engage fundraisers.  Nonprofits which produce their own solicitation mail can enter the mailpieces at the nonprofit rate with no difficulty.  But the USPS, acting under the RTCMR, denied entry at the nonprofit rate to materially identical mailpieces simply because RBI's nonprofit clients engaged a fundraiser.  This amounts to viewpoint discrimination against the smaller, less popular, and less well-funded nonprofits that are compelled to engage fundraising professionals to communicate with the public and solicit donations.  RBI's nonprofit clients therefore have a constitutional cause of

action against the RTCMR because they are not necessary nor narrowly drawn to achieve a compelling government interest.

In addition to the facial challenge in Count V, Count VI of the Complaint (¶44) alleges that the USPS's *application* of the RTCMR to RBI's nonprofit clients amounts to an unconstitutional content-based regulation. The USPS routinely allows nonprofits that produce their own solicitation mail to post their mailpieces at the nonprofit rate. But the USPS applied the RTCMR to RBI's nonprofit clients to deny entry at the nonprofit rate to materially identical mailpieces simply because of the relationships between RBI and the nonprofits. In this manner, the USPS discriminated between nonprofits that produce their own solicitation mail (which nonprofits tend to be larger, more popular, and thus better funded) and nonprofits that must engage outsiders to assist in fundraising (which nonprofits tend to be smaller, less popular, and thus less well funded). RBI's nonprofit clients therefore have another constitutional cause of action against the RTCMR because they are not necessary nor narrowly drawn to achieve a compelling government interest.

Count VII of the Complaint (¶45) alleges that the USPS's RTCMR are a facially unconstitutional "time, place, or manner" regulation of speech. The mail stream is indisputably a public forum (Greenberg v. Bolger, 497 F.Supp.756, 776 (E.D.N.Y. 1980)) and any regulation that restricts a nonprofit's access to the nonprofit rate because it engages a fundraising professional disproportionately burdens the speech of smaller, less popular, and thus less-well funded nonprofits and causes. Thus, the USPS created a licensing scheme restraining speech based on the economic status of mailers. The RTCMR are unconstitutional in this context because they are unnecessary restrictions on RBI's nonprofit clients' constitutional right to solicit contributions, they are not narrowly tailored to achieve a significant government interest,

and they unconstitutionally limit the widest channel of communication available for smaller, less popular, and less well-funded nonprofits.

In addition to the facial challenge in Count VII, Count VIII of the Complaint (¶46) alleges that the USPS's *application* of the RTCMR to RBI's nonprofit clients amounts to an unconstitutional "time, place, or manner" regulation of speech.  The USPS has applied the RTCMR in such a way that smaller, less popular, and less well-funded nonprofits are denied access to the nonprofit rate simply because they engage a fundraising professional.  At the same time, larger nonprofits which produce their own materially identical solicitation materials have free access to the nonprofit rate.  This application of the RTCMR to RBI's nonprofit clients is unconstitutional because it is an unnecessary restriction that is not narrowly tailored to achieve a significant government interest and it denies access to the widest channel of communication available for smaller, less popular, and less well-funded nonprofits.

Count IX of the Complaint (¶47) alleges that the USPS's RTCMR are facially unconstitutional under Fifth Amendment's Due Process Clause equal protection jurisprudence, because they burden a fundamental right of nonprofits that employ fundraising professionals. Nonprofits that produce their own solicitation mail can enter the mailpieces at the nonprofit rate with no difficulty.  But the USPS, acting under the RTCMR, may deny entry at the nonprofit rate to a materially identical mailpiece simply because the mailing nonprofit engaged a fundraising professional or because of the nature of that agreement.  Classifying nonprofits based upon whether or how they engage a fundraising professional thus burdens these disproportionately less popular and smaller nonprofits' fundamental right to free speech.  The very text of the RTCMR erects this discriminatory classification and imposes this burden.  The RTCMR are, therefore, unconstitutional, because they are not necessary to achieve a compelling government interest.

In addition to the facial challenge in Count IX, Count X of the Complaint (¶48) alleges that the USPS *applied* the RTCMR to deny RBI and RBI's clients their equal protection rights guaranteed by the Fifth Amendment.  The USPS applied the RTCMR to distinguish between nonprofits that produce their own solicitation material and nonprofits that engaged RBI to produce solicitation material.  This latter group's fundamental right to free speech was burdened by this application simply because of the relationship between the nonprofits and RBI.  This application of the RTCMR is unconstitutional under the Fifth Amendment's Due Process Clause equal protection jurisprudence because it was not necessary to achieve a compelling government interest.

### IV.  Conclusion

RBI has standing to assert the constitutional claims because it is an injured party, because its injuries are traceable to USPS actions, because the relief requested will redress its injuries.  Furthermore, RBI is entitled to *jus tertii* standing to assert the ten constitutional claims of its nonprofit clients because RBI's interests are so closely aligned with these nonprofits that RBI will be able to properly frame the issues and present them with the necessary adversarial zeal.

Respectfully submitted,


/s/                                                                                          .
Charles H. Nave, Esq.
Charles H. Nave, P.C.
1225 Third Street SW
Roanoke, VA 24016
D.C. Bar #484501
Tel: 540 345 8848
Fax: 540 345 8849
Email: charlie@nave-law.com
Counsel for REESE BROTHERS, INC., Plaintiff