IN THE UNITED STATES DISTICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REESE BROTHERS, INC.,<br>    Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE<br>    Defendant/<br>    Counterclaim Plaintiff,<br><br>v.<br>REESE TELESERVICES, INC., and<br>RESOURCES GROUP, LLC d/b/a<br>TRG HOLDINGS, INC.,<br>    Counterclaim Defendants. | Civil Action No. 06-CV-00434 (RMU) |

**PLAINTIFF'S MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL
ANY FORTHCOMING ORDER DENYING PLAINTIFF *JUS TERTII* STANDING**

COMES NOW the Plaintiff, Reese Brothers, Inc. ("RBI"), by and through the undersigned counsel, pursuant to 28 U.S.C. § 1292(b), and <u>only</u> in the event that a forthcoming order denies RBI *just tertii* standing to assert constitutional claims, RBI hereby respectfully (1) moves this Court to certify said order for interlocutory appeal and (2) moves this court to stay all proceedings in this case until the Court of Appeals rules on the standing issue. As grounds for these motions, Plaintiff would show the following facts and authorities.[1]

I. Factual Background

RBI is a formerly operating for-profit telemarketing company. Compl. ¶ 9. While in operation, RBI contracted with various nonprofit clients to provide them with telemarketing

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiff's counsel has conferred with counsel for the other parties in this case regarding this motion. Counsel for Counterclaim Defendants has consented to this motion. Counsel for Defendant/Counterclaim Plaintiff has not consented to this motion.

solicitation and direct mail consulting services. *Ibid.* As part of the fundraising operation, the nonprofit clients posted letters to donors at the Nonprofit Standard Rate. Compl. ¶ 10. Following an investigation into the relationship between RBI and its nonprofit clients, the United States Postal Service ("USPS"), in 1998, charged RBI with improperly using the discounted postage rates available only to non-profit entities and for-profit entities acting as agents of non-profit entities. Compl. ¶ 14. The USPS concluded that the contractual agreement between RBI and its nonprofit clients rendered the mailings ineligible for the discounted postage rates. Compl. ¶ 16.

In response to the alleged under-payments (representing the differences between the nonprofit postage rate and the standard postage rate), the USPS sought to collect postal deficiencies totaling $3,600,068.23. Compl. ¶¶ 14, 20. Further, the USPS denied RBI's nonprofit clients the use of their nonprofit postal permits and these nonprofit clients were compelled to post mail at the higher standard rate as long as they remained RBI clients. Compl. ¶ 34. Pursuant to USPS regulations, RBI requested that the difference between the nonprofit rate and the standard rate be held in a deposit arrangement so that the excess postage could be refunded upon a successful appeal. Compl. ¶ 23. Over time, RBI's nonprofit clients left RBI and engaged other fundraisers so they could again use their nonprofit postage permits. Their departure from their relationship with RBI was a direct result of the USPS actions. Compl. ¶¶ 34-35.

On March 9, 2006, RBI filed the Complaint in this case seeking to set aside the postal deficiencies, refund of the money paid into the deposit arrangement, and other relief. Compl. ¶¶ 56-60. The first ten causes of action in the Complaint allege violations of constitutional rights. Compl. ¶¶ 39-48, hereinafter the "constitutional claims." The remaining seven causes of action

assert non-constitutional causes of action including claims that the USPS acted outside of its statutory jurisdiction and authority, that the USPS acted contrary to Congressional intent, and that the USPS's actions were arbitrary and capricious. Compl. ¶¶ 49-55, hereinafter the "non-constitutional claims."

These two sets of causes of action rely upon different sets of facts that must be discovered and proved at trial. While there is some overlap in the evidence required for both sets of causes of action (e.g. causes of action in both sets will rely upon proof of the basic timeline of the case and both constitutional claims and non-constitutional claims will rely upon proof that the USPS never attempted to enforce its relationship test cooperative mailing regulations ("relationship regulations") against other entities (constitutional claim at Compl. ¶ 40 and non-constitutional claim at Compl. ¶ 53)), some of the facts to be discovered and proved fall into two separate sets. For example, the constitutional claims will require proof of how the USPS evaluates factors in the relationship regulations to determine if a particular mailing is eligible for the nonprofit rate (Compl. ¶ 39) and expert testimony regarding the options available to different nonprofits depending on their size, popularity, and funding (Compl. ¶¶ 43, 44, 45, 46, 47, and 48). Meanwhile, the non-constitutional claims will require proof of different facts, including, *inter alia*, proof that RBI and its clients had principal-agent relationships rather than joint ventures (Compl. ¶¶ 49, 51).

On October 10, 2006, the Court entered its Memorandum Order Ordering the Plaintiff to Show Cause Why Its Constitutional Claims Should Not be Dismissed. (Docket #31, hereinafter "Standing Order"). This order sought a brief from RBI regarding why it should be allowed to continue litigating the constitutional claims. RBI timely filed a response to the Standing Order

on October 25, 2006 (Docket #33, hereinafter "RBI's Standing Brief"). To date, the Court has not ruled on whether RBI has standing to pursue the constitutional claims.

## II. Legal Standard

Congress has provided for interlocutory appeals at 28 U.S.C. § 1292(b) which provides that:

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Thus, the considerations are (1) whether the issue involves a controlling question of law, (2) whether there is substantial ground for difference of opinion on the issue, and (3) whether an immediate appeal may materially advance the ultimate determination of the litigation.

## III. Analysis

Any order denying Plaintiff *jus tertii* standing to litigate the constitutional claims alleged in the Complaint should be certified for immediate appeal because such an order qualifies under all three factors cited in 28 U.S.C. § 1292(b).

There is no doubt that an order denying RBI *jus tertii* standing to litigate the constitutional claims would concern a controlling question of law. Such an order, if erroneous, would constitute reversible error on final appeal. Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974), cert. denied, 419 U.S. 885 (1974). See also Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 24 (2d Cir. 1990).

Some courts have essentially equated the "controlling law" question to whether appeal of a particular issue would save time and expense for the parties and court. See, e.g., Johnson v. Burken, 930 F.2d 1202, 1205-1206 (7th Cir. 1997); Eisenberg v. U.S. Dist. Court, 910 F.2d 374,

376 (7th Cir. 1990); and In re Dunlop Corp., 591 F.2d 139, 148 n.12 (2nd Cir. 1978). The *jus tertii* standing question should be certified under this standard as well. If the RBI were to await a final decision in this case and then successfully appeal the issue, all of the parties and the Court will have gone through discovery and trial to determine the facts relevant to the nonconstitutional claims only to go through discovery and trial again to determine the facts relevant to the constitutional claims.[2]

The question of whether there is substantial ground for difference of opinion regarding whether fundraisers have *jus tertii* standing to litigate the constitutional claims of their nonprofit clients presents a special case. Plaintiff is confident that the fundraisers *are* endowed with such standing and that there is a reasonably clear legal consensus on the issue. See cases cited and argument presented in RBI's Standing Brief. Plaintiff certainly acknowledges the possibility that there are cases to the contrary, but Plaintiff's counsel is unaware of them.[3] But more importantly, if this Court ultimately rules that RBI does not have *jus tertii* standing to litigate the constitutional claims, that ruling alone should be evidence of a substantial difference of opinion on the issue.[4]

---

[2] "It was once suggested that to be controlling, a question must be important to a large number of other suits, as well as to the parties in a particular case. [Kohn v. Royall, Koegel & Wells, 59 F.R.D. 515, 524-525 (D.N.Y. 1973)] This suggestion is not supported by any statutory purpose. Certification provides a means of achieving case-specific accommodation of the antagonistic pressures that surround final-judgment doctrine that should not depend on general importance. The opportunity to achieve appellate resolution of an issue important to other cases may provide an additional reason for certification, but cannot be a requirement. [citations omitted]" 16 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3930 (2001).

[3] N.B. Defendant's counsel elected not to file a reply to RBI's Standing Brief.

[4] "The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of a specific case. If proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt." 16

An immediate appeal will materially advance the ultimate determination of the litigation because, as noted above, the parties will be able to move forward in the assurance that they will only have to go through discovery and trial once. See, e.g., Garner v. Wolfinbarger, 430 F.2d 1093, 1097 (5th Cir. 1970) (holding that interlocutory appeal is appropriate "where decision on an issue would affect the scope of the evidence in a complex case") and Atlantic City Elec. Co. v. General Elec. Co., 207 F.Supp. 613, 620 (D.N.Y. 1962), aff'd 312 F.2d 236 (2nd Cir. 1962), cert. denied 373 U.S. 909 (1963) (holding that statute of limitations question is appropriate for interlocutory appeal because it "affects the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which these cases engender.") For this same reason, Plaintiff also moves that this Court stay all proceedings in this case until the Court of Appeals rules on the standing issue.

Finally, Federal Practice and Procedure observes that

> [t]he three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal. The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling.[5]

In this case, each of these factors is present and therefore interlocutory appeal is very advantageous. Because the question of whether RBI is entitled to *jus tertii* standing is a rather straightforward inquiry, any decision of the Court of Appeals is likely to come promptly. And, given the early stage of this litigation, the burdens on the Court and the parties would be great if this Court's resolution of the standing question was later reversed.

---

Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3930 (2001) (citing Brown v. Texas & Pac. R.R., 392 F.Supp. 1120, 1125 (D.La. 1975)).
[5] 16 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3930 (2001)

## IV.  Conclusion

For the reasons cited above, any forthcoming order denying RBI *jus tertii* standing to litigate the constitutional claims alleged in the Complaint should be certified for interlocutory appeal and proceedings in this Court should be stayed pending resolution of that issue in the Court of Appeals.

Respectfully submitted,

/s/                                                                                           .
Charles H. Nave, Esq.
Charles H. Nave, P.C.
1225 Third Street SW
Roanoke, VA 24016
D.C. Bar #484501
Tel: 540 345 8848
Fax: 540 345 8849
Email: charlie@nave-law.com
Counsel for REESE BROTHERS, INC., Plaintiff

IN THE UNITED STATES DISTICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REESE BROTHERS, INC.,<br>　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES POSTAL SERVICE<br>　　Defendant/<br>　　Counterclaim Plaintiff,<br><br>　　v.<br>REESE TELESERVICES, INC., and<br>RESOURCES GROUP, LLC d/b/a<br>TRG HOLDINGS, INC.,<br>　　Counterclaim Defendants. | Civil Action No. 06-CV-00434 (RMU) |

## ORDER

AND NOW, upon consideration of Plaintiff's Motion for Certification for Interlocutory Appeal Any Forthcoming Order Denying Plaintiff *Jus Tertii* Standing, it is hereby CERTIFIED that, in the opinion of the Court, the order denying Plaintiff *jus tertii* standing to litigate the constitutional claims alleged in the Complaint involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

IT IS FURTHER ORDERED that proceedings in this Court are stayed until this issue is resolved by the Court of Appeals

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　RICARDO M. URBINA
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge