UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **REESE BROTHERS, INC.,**         )<br>　　Plaintiff/Counterclaim Defendant )<br>　　　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>**UNITED STATES POSTAL SERVICE,** )<br>　　Defendant/Counterclaim Plaintiff )<br>　　　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　)<br>**REESE TELESERVICES, INC., and** )<br>**THE RESOURCES GROUP, LLC d/b/a** )<br>**TRG HOLDINGS, INC.,**         )<br>　　Third-Party Defendants         )<br>_____) | Civil Action No.  06-0434 (RMU) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MEMORANDUM REGARDING
STANDING TO LITIGATE CONSTITUTIONAL CLAIMS**

**I.  INTRODUCTION**

On March 9, 2006, Reese Brothers, Inc. ("RBI") filed a Complaint asserting seventeen causes of action.  See Complaint at ¶¶ 11-21.  Ten of the causes of action alleged that the United States Postal Service ("USPS") "promulgated regulations which violated the Constitution both facially and as applied to plaintiff and its [nonprofit] clients."  See id. at ¶ 3, 11-17.  On October 10, 2006, the Court issued a Memorandum Order requiring plaintiff to show cause why the constitutional claims asserted on behalf of its clients should not be dismissed.  See Memorandum Order ("Order") at pp. 3, 5.  On October 25, 2006, plaintiff filed a Memorandum of Law Regarding Standing to Litigate Constitutional Claims.  See Pltf's Memo. Defendant/Counterclaim Plaintiff, by undersigned counsel, hereby provides a response to plaintiff's Memorandum.

## II.  FACTUAL BACKGROUND

A.  <u>The Cooperative Mail Rule</u>

Since 1951, Congress has authorized reduced rates for postage for limited types of nonprofit organizations.[1]  See Counterclaim and Third Party Complaint ("Counterclaim") at ¶ 8; Reese Brothers Reply to Counterclaim ("Reply to Countercl.") ¶ 8.  In 1975, the USPS issued regulations containing restrictions on the use of the Nonprofit Standard Mail Rate ("nonprofit rate").[2]  Counterclaim at ¶ 9; Reply to Countercl. ¶ 9.  These regulations provide that (i) an organization authorized to mail at the nonprofit rate "may mail only its own matter at those rates;" (ii) an organization "may not delegate or lend the use of its authorization to mail at the [nonprofit rate] to any other person or organization;" and (iii) no person or organization "may mail, or cause to be mailed by contractual agreement or otherwise, any ineligible matter at the [nonprofit rate]."  Domestic Mail Manual §§ E670.5.1 and 5.2.

In 1989, the USPS Office of Classification and Rates Administration issued Postal Service Customer Support Ruling PS-209 ("CSR 209"), entitled "Cooperative Mailings."  The purpose of this ruling was to provide postal employees and customers with guidance regarding the prohibition on cooperative mailings.  Counterclaim at ¶ 19.  CSR 209 states that mailings

---

[1]A qualified nonprofit organization is a religious, educational, scientific, philanthropic, agricultural, labor, veteran's or fraternal organization or association that is not organized for profit and none of the net income of which inures to the benefit of any private stockholder or individual.  Before being entitled to mail at the nonprofit bulk rate, the organization shall furnish proof of its qualifications to the Postal Service.  Domestic Mail Classification Schedule § 300.221.

[2]The USPS is authorized to implement, adopt, amend and repeal such rules and regulations as it deems necessary to accomplish the objectives of its organic statute.  See 39 U.S.C. § 401(1).

involving a for-profit entity and a nonprofit entity are permitted at the nonprofit rates only if they are the product of a legitimate principal/agent relationship.

> When a nonprofit and for-profit organization enter into a joint business venture, the joint business venture is not entitled to mail at the [nonprofit rates]. Typically both parties put something in (a list of names and use of [nonprofit rate] authorization for the nonprofit party, and payment of printing and mailing costs by the for-profit organization) and both parties take something out (a share of the proceeds/profits).

CSR 209; Counterclaim at ¶ 24. In numerous court decisions, the cooperative mail regulation and the USPS' administrative guidance regarding the regulation have been upheld as valid. See generally U.S. v. Raymond and Whitcomb, 53 F.Supp. 436, 442 (S.D.N.Y. 1999); U.S. v. Univ. Publ'g Corp., 835 F.Supp. 489, 490-91 (S.D. Ind. 1993).[3]

### B. Reese Brothers Inc. Violation of the Cooperative Mail Rule

During the period January 1, 1993 through December 31, 1997, based upon contracts between RBI and nonprofit entities, RBI made mailings using the nonprofit clients' nonprofit rates. However, because the mailings were made at no risk to the nonprofit entities, among other things, the mailings were determined to violate the "cooperative mail rule." Counterclaim at ¶¶ 38-43. Therefore, the USPS issued RBI a revenue deficiency in the amount of $3,600,068.23. Id. at 44.

### III. ARGUMENT

### A. Standing

"In every federal case, the party bringing the suit must establish standing to prosecute the

---

[3]In an unreported case, U.S. ex rel Saklad v. Lewis et al., No. 97-10052 (U.S.D.C. Dist. Mass.), the court found that the cooperative mail rule does not violate the Constitution. See Exhibit A.

action. 'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute . . . ..'" Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 10 (2004)(quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)(courts have limited jurisdiction and must ensure that controversies are fit for judicial resolution. "Consistent with th[is] principle, . . . standing jurisprudence contains two strands: Article III standing which enforces the presence of a justiciable case or controversy requirement, Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-62 (1992), and prudential standing which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" Newdow, 542 U.S. at 11-12 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984). In order to establish standing under Article III, a plaintiff must demonstrate that (1) it has suffered a concrete injury; (2) which was caused by, or is traceable to, allegedly illegal conduct by the defendant; and (3) which is likely to be redressed by a favorable judicial decision. Lujan, 504 U.S. at 560. Prudential standing encompasses, among other things, "the general prohibition on a litigant's raising another person's legal rights." Newdow, 542 U.S. at 12. The reasons for this rule are twofold. First, the courts should not adjudicate constitutional rights unnecessarily because it may be that the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether or not the in-court litigant is successful. See Ashwander v. TVA, 297 U.S. 288, 345-48 (1936) (Brandeis, J., concurring)(offering the standing requirement as one means by which courts avoid unnecessary constitutional adjudications). Second, the third parties usually will be the best advocates of their own rights. The courts depend on effective advocacy, and therefore prefer to construe legal rights only when the most effective advocates of those rights are before them.

There are some circumstances, however, in which the courts have relaxed the prudential-standing limitation. These circumstances include First Amendment challenges to statutes. Sec'y of State of Md. v. Munson Co., Inc., 467 U.S. 947, 956 (1984). However, a litigant may only raise the legal rights of another if the litigant's "interests in challenging the statute are completely consistent with the First Amendment interests of the [third party] it represents." Id. at 958. To determine whether this third party or *jus tertii* standing is appropriate, the "[c]ourt considers whether the third party has sufficient injury-in-fact to satisfy the Art[icle] III case-or-controversy requirement, and whether, as a prudential matter, the third party can reasonably be expected to properly frame the issues and present them with the necessary adversarial zeal." Id. at 956. If the interests of the litigant are not parallel and are potentially in conflict with the interests of the third party, then third party or *jus tertii* standing will not be allowed. Newdow, 541 U.S. at 15. Moreover, the absence of a chilling effect on speech will eliminate a litigant's right to raise a third party's interests. See L.A. Police Dep't v. United Reporting Publ'g Corp., 528 U.S. 32, 41 (1999)(Scalia, J., concurring)(Where a statute does nothing to chill speech there is no basis for "a plaintiff to complain about the application of the statute to someone other than himself.).[4]

---

[4]In United Reporting Publ'g Corp., the Court found that the challenged statute was a restriction on access to government information and not a restriction on protected speech. 528 U.S. at 32. Applying this guidance to the matter at hand, plaintiff has no *jus tertii* standing. The cooperative mail rule is not a restriction on protected speech. It is a regulation associated with the receipt and use of a subsidy, the Nonprofit Standard Mail rates. Congressional limitations and burdens on the receipt and use of a subsidy do not give rise to First Amendment challenges absent some illegitimate criteria for the limitations and burdens - - something not alleged or implicated here. See Regan v. Taxation with Representation of Wash., 461 U.S. 540 (1983); The Enterprise v. U.S. et al., 833 F.2d 1216 (6th Cir. 1987).

> B. <u>Plaintiff Does Not Have Standing to Assert the Constitutional Rights of the Nonprofit Entities.</u>

Plaintiff argues that the First Amendment rights of its nonprofit clients were violated by the USPS' application of the cooperative mail rule. Plaintiff is incorrect. By its terms, the cooperative mail rule does not implicate First Amendment interests. It solely requires that the parties utilizing the non-profit rate are involved in a legitimate principal/agent relationship. Irrespective of speech, the rule serves to ensure that the Nonprofit Standard Mail rates are used to benefit only those who Congress singled out for the subsidy. <u>Nat'l Retired Teachers Ass'n</u>, 593 F.2d 1360, 1364 (D.C. Cir. 1979).

Plaintiff also argues that the USPS withdrew the nonprofit entities' rights to mail at the nonprofit rate, and thereby violated the entities' First Amendment rights. <u>See</u> Pltf's Memo. at pp. 10-11. Plaintiff's argument is purely speculative. There is no evidence that the USPS withdrew the right to use the nonprofit rates. Rather, the USPS determined that the contractual relationship between RBI and the nonprofit entities violated Congressional restrictions on the use of the nonprofit rates. This determination was not based upon the content of the mailings. It was simply the application of a law and related regulation to the use of the nonprofit rate. <u>See</u> <u>United Reporting Publ'g Corp.</u>, 528 U.S. at 32, 40. ("This is not a case in which the government is prohibiting a speaker from conveying information . . . it merely requires . . . [the] respondent . . . to qualify under the statute. . . ."). It was aimed at preventing the extension of nonprofit rates to for-profit entities. <u>Id</u>. at 40. The nonprofits remained free to use the nonprofit rate as long as they complied with the Congressional restraints on its use. In fact, plaintiff admits that its clients were able to continue mailing at the nonprofit rates by going to other providers. Pltf's Memo. at

p. 2. Importantly, the Supreme Court has never held that if Congress subsidizes some speech it must subsidize all speech. In fact, the Supreme Court has held that absent an invidious purpose, Congress may freely give and freely take away a subsidy for speech. See Regan v. Taxation with Representation of Wash., 461 U.S. 540, 546 (1983);[5] Cammarano v. U.S., 358 U.S. 498, 515 (1959) (Douglas, J., concurring)(the Supreme Court has continuously rejected the notion "that First Amendment rights are somehow not fully realized unless they are subsidized by the State.") In doing so, Congress does not infringe upon any First Amendment rights or regulate any First Amendment activity. Id.

Plaintiff also contends that forbidding the entities' solicitation mailing produced a chilling effect on the entities' solicitation speech. Id. at p. 10. Again, there is no such evidence in the record. As this Court noted in its Order, in this Circuit, "no standing exists if the plaintiff's allegations are 'purely speculative' . . . [or] . . . where the court 'would have to accept a number of very speculative inferences and assumptions in an endeavor to connect the alleged injury with [the challenged conduct].'" Order at pp. 3-4. Here, plaintiff's claim is purely speculative.

Because the cooperative mail rule does not impinge on the First Amendment rights of the nonprofit entities, it cannot have a chilling effect on their speech. Because the cooperative mail

---

[5]In Regan v. Taxation with Representation of Washington, Taxation With Representation ("TWR") argued that Congress' prohibition against substantial lobbying by § 501(c)(3) organizations violated the First Amendment. However, the Court determined that the statute "d[id] not deny TWR the right to receive deductible contributions to support its non-lobbying activity, nor d[id] it deny TWR any independent benefit on account of its intention to lobby. Congress . . . merely refused to pay for the lobbying out of public monies." Regan, 461 U.S. at 545. The Court stated that it "has never held that the Court must grant [such] a benefit . . . to [one] who wishes to exercise a constitutional right." Id.

rule does not have a chilling effect on the entities' speech, plaintiff does not have *jus tertii* standing to challenge the constitutionality of the application of the rule on behalf of the nonprofit entities which are not a party to this lawsuit. See United Reporting Publ'g Corp., 528 U.S. at 41 (Scalia, J., concurring)(where a statute does nothing to chill speech there is no basis for "a plaintiff to complain about the application of the statute to someone other than himself.").

To assert *jus tertii* standing, plaintiff also must show that its interests are consistent with the constitutional interests of the third party whose rights it seeks to vindicate. Here, plaintiff's interests are not parallel and are potentially in conflict with the interests of the nonprofit entities. Newdow, 542 U.S. at 15; Munson, 467 U.S. at 958. Therefore, plaintiff cannot "properly frame the issues of the nonprofit entities and present them with the necessary adversarial zeal." Munson, 467 U.S. at 956. More specifically, the injury about which plaintiff complains is the application of the regulations to its contractual relationship with its nonprofit clients. See Pltf's Memo. at p. 4. RBI complains that "[o]ver time, [its] nonprofit clients left RBI and engaged other fundraisers." Id. at p. 2. According to plaintiff, the loss of these clients "was a direct result of the USPS actions." Id. at 3; Complaint at ¶¶ 34-35. Plaintiff requests that th[e] "Court set aside the postal deficiencies and the decision upholding them." Id. at 4. These interests are clearly not "completely consistent with the First Amendment interests of the charities it represents." Munson, 467 U.S. at 947. Furthermore, if plaintiff is unsuccessful in the current litigation and the underlying debt is upheld, plaintiff can pursue litigation with the parties whose interests it now attempts to vindicate.[6] Such a circumstance clearly would place the interests of

---

[6]Plaintiff indicated that "the letters assessing deficiencies on RBI were actions not only against RBI but also against RBI's clients." Pltf's Memo. at p. 9, n.5. Plaintiff stated, "liability for such postal deficiencies is joint and several among a nonprofit and its fundraiser." Id.

the plaintiff and its nonprofit clients in conflict, a consequence that must eliminate *jus tertii* standing.  See Newdow, 542 U.S at 15 ("In marked contrast to our case law on *jus tertii*, see, e.g., Singleton v. Wulff, 428 U.S. 106, 113-118 (1976) (plurality opinion) (the interests of this [litigant] and this [third party] are not parallel and, indeed, are potentially in conflict.)

      C.   The Facts of Plaintiff's Case Are Distinguishable From Those in Munson

Plaintiff argues that the facts in Munson "are materially identical to the facts in the instant case." Pltf's Memo. at p. 6.  Plaintiff is incorrect.  In Munson, a professional for-profit fundraiser alleged that a Maryland statute which prohibited charitable organizations from paying expenses of more than 25% of the gross amount of money raised for a particular fundraising activity was an unconstitutional infringement on its nonprofit clients' right to free speech and assembly.  Munson, 467 U.S. at 950, 953.  Munson complained that it regularly charged a particular charitable organization more than 25% of the gross amount of money raised.  Id. at 951.  The Maryland Secretary of State challenged Munson's standing to assert this claim on behalf of the charitable organization.  Id. at 952.  The Court determined that "[t]he activity sought to be protected was at the heart of the business relationship between Munson and his clients, and Munson's interests in challenging the statute [were] completely consistent with the First Amendment interests of the charities it represent[ed.]" Id. at 958.

Plaintiff's case is distinguishable from Munson.  Unlike the Maryland statute, the cooperative mail rule does not regulate the terms under which the plaintiff and its clients can freely contract.  "Because the percentage limitation [in Munson] restricted the ways in which charities might engage in solicitation activity, this was a 'direct and substantial limitation on [First Amendment] protected activity . . . .'" Id. (citing Schaumburg v. Citizens for a Better

Env't, 444 U.S. 620, 636 (1980)).  Absent such a direct impact on its right to contract, plaintiff does not have *jus tertii* standing under Munson.[7]

Here, the cooperative mail rule does not regulate the ways in which the parties may engage in solicitation activity.  It prevents the improper sharing of the nonprofit rates.  In Munson, the statute completely prohibited Munson from engaging in fundraising activity for a charitable organization.[8]  This went to the heart of the business relationship.  The cooperative mail rule does not prevent plaintiff from engaging in fundraising activities for the nonprofit entities; nor does it prevent the nonprofit entities from engaging in fundraising activities.  The parties are free to engage in solicitation activity.  Therefore, the nonprofit rates do not form the heart of the business relationship between plaintiff and its clients.  The nonprofit rates are a subsidy provided by Congress to qualified nonprofit entities only.  In the absence of any interest on the part of plaintiff in the Nonprofit Standard Mail rate, there can be no parallel interest between plaintiff and its clients.

## IV. CONCLUSION

For the foregoing reasons, Defendant/Counterclaim plaintiff submits that plaintiff does not have standing to assert the constitutional claims of it nonprofit clients.[9]

---

[7] Munson requires that plaintiff's clients have First Amendment interests that are affected by the cooperative mail rule.  Plaintiff does not.

[8] To the extent that plaintiff is affected by any state requirement that plaintiff provide a guaranteed minimum to its clients, plaintiff should be challenging such state regulation under Munson.  The cooperative mail rule creates no such requirement.

[9] The Court asked the parties to address plaintiff's standing "to claim violations of constitutional rights of nonprofit entities . . . ."  Order at pp. 4-5.  Although plaintiff addressed the merits of its constitutional arguments, defendant properly confined its discussion to the issue of standing.  However, it makes no concessions with respect to plaintiff's arguments on the merits.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
555 Fourth Street, N.W., Civil Division
Washington, D.C. 20005
202-514-6531

Of Counsel:
Harold Durham
Attorney
United States Postal Service
475 L'Enfant Plaza, S.W.
Washington, D.C. 20260-1127

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2006, I caused the foregoing to be served first class mail, postage prepaid, addressed as follows:

Jeffrey B. Balicki, Esq.
428 Boulevard of the Allies
Pittsburgh, PA 15219

Charles H. Nave, Esq.
Charles H. Nave, P.C.
1225 Third Street, S.W.
Roanoke, Virginia 24016

                                            /s/
                                            MARIAN L. BORUM
                                            Assistant United States Attorney