UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| REESE BROTHERS, INC., | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| UNITED STATES POSTAL SERVICE, | : | Civil Action No.: | 06-0434 (RMU) |
| | : | | |
| Defendant/ | : | Document No.: | 31 |
| Counterclaim Plaintiff, | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| REESE TELESERVICES, INC., and | : | | |
| RESOURCES GROUP, LLC d/b/a | : | | |
| TGR HOLDINGS, INC., | : | | |
| | : | | |
| Counterclaim Defendants. | : | | |

**MEMORANDUM OPINION**

CONCLUDING THAT THE PLAINTIFF HAS STANDING
TO RAISE THE CONSTITUTIONAL CLAIMS OF ITS FORMER CLIENTS

**I. INTRODUCTION**

The plaintiff, Reese Brothers, Inc. ("Reese Brothers"), is a defunct for-profit telemarketing company. Reese Brothers claims that the United States Postal Service ("the Postal Service") improperly required the plaintiff to pay standard postage rates for mailings associated with its solicitations for donations to its non-profit clients. The plaintiff brings various constitutional and statutory claims. Because the plaintiff's constitutional claims assert the constitutional rights of third-party non-profit entities, the court ordered the plaintiff to show cause why the court should not dismiss the plaintiff's constitutional claims *sua sponte* for lack of standing. On review of the parties' briefing, the court concludes that the plaintiff has third-party

standing to prosecute its claims.

## II.  BACKGROUND

Reese Brothers is a quondam for-profit telemarketing company.  Compl. ¶ 9.  While in operation, the plaintiff contracted with non-profit entities to provide them with telemarketing solicitation and direct mail consulting services.  *Id.*  As part of its operation, the plaintiff routinely sent mailings to prospective donors.  *Id.*  Following an investigation into the plaintiff's business practices, the Postal Service, in 1998, charged the plaintiff with improperly availing itself of discounted postage rates available only to non-profit entities and for-profit entities acting as agents of non-profit entities.  *Id.* ¶ 14.

In response to Reese Brothers' alleged under-payments (representing the differences between the non-profit postage rate and the standard postage rate), the Postal Service sought a total award of $3,600,068.23.  *Id.* ¶¶ 14, 20.  After a lengthy administrative appeals process, including the plaintiff's request for forbearance, the Postal Service agreed to forgive $1,953,790.28 of the plaintiff's debt, reducing the amount the plaintiff owes to $1,646,277.95.  *Id.* ¶ 29, Ex. I.

Attempting now to avoid any payment to the Postal Service, the plaintiff brings suit alleging 17 independent causes of action.  In its first 10 causes of action, the plaintiff alleges violations of constitutional rights of third-party former non-profit clients.  Whether Reese Brothers has standing to adjudicate these claims on the merits is the question now under consideration.

### III.  ANALYSIS

### 1.  Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies.  U.S. CONST. ART. III, § 2, cl. 1.  These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing.  *Defenders of Wildlife*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. EPA*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam).

To demonstrate standing, a plaintiff must satisfy a three-pronged test.  *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (citing *Defenders of Wildlife*, 504 U.S. at 560).  First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical.  *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103).  Second, the injury must be fairly traceable to the governmental conduct alleged.  *Id.*  Finally, it must be likely that the requested relief will redress the alleged injury.  *Id.*  The D.C. Circuit has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001).  Nor is there standing where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged

3

conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

Ordinarily, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984). If the plaintiff meets three conditions, however, the court may conclude that the plaintiff asserting another's rights has *jus tertii* or "third party standing." *Sec'y of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). First, the plaintiff must have suffered an actual injury, although not necessarily one to its own legally protected interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Second, the plaintiff must have a close relationship with the party whose rights he or she is asserting, "thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute" to ensure that the plaintiff will be an effective advocate. *Id.* And third, "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id.*

### 2. The Plaintiff Demonstrates Standing

The parties do not quibble over whether the plaintiff satisfies Article III requirements for an injury-in-fact. As a concrete injury, the plaintiff may point to an outstanding assessment against Reese Brothers to the Postal Service for $1,646,277.95. On causation, the plaintiff may fairly trace this assessment to the government. And as for seeking redress, the plaintiff may obtain it through a court order setting aside the deficiencies. The plaintiff's constitutional standing, then, is not in question. *Byrd*, 174 F.3d at 243.

The bone of contention over which the parties grapple is whether, as a prudential matter, Reese Brothers can "reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal," *Munson*, 467 U.S. at 956, and whether anything hinders Reese

Brothers's former clients from bringing an action on their own behalf, *Powers*, 499 U.S. at 411. The plaintiff emphasizes the factual similarities between the plaintiff in *Munson* and itself.[1] Both were for-profit enterprises asserting the constitutional rights of non-profit clients. Pl.'s Mem. Regarding Standing to Litigate Constitutional Claims ("Pl.'s Mem.") at 7. Both lost their clients as a consequence of government regulation of the terms of their contracts with clients. *Id.* at 6. And both seek to protect activity (fundraising) that is "at the heart of the business relationship between [the plaintiffs] and [their nonprofit] clients." *Munson*, 467 U.S. at 958. Moreover, the plaintiff reasons, because the Postal Service's deficiencies resulted in the plaintiff's clients' loss of nonprofit postal rates and exposure to joint and several liability for the deficiency, the plaintiff's interests "are completely consistent with the First Amendment interests of the charities it represents." *Id.*; Pl.'s Mem. at 9 n.5.

The defendant, understandably, adopts a different view. The defendant distinguishes *Munson*, noting that there the state of Maryland prohibited charities from paying more than 25% of revenue to fundraisers, thus imposing a "direct and substantial limitation on protected activity." Def.'s Response to Pl.'s Mem. ("Def.'s Response") at 9-10 (quoting *Munson*, 467 U.S. at 958). Here, however, the Postal Service's action merely "prevents the improper sharing of the nonprofit rates," which does not affect "the heart of the business relationship." *Id.* at 10.

---

[1] Succinctly put, Munson was a professional fund raiser who challenged a 25% limit on charitable fund-raising expenses imposed by Maryland statute. *Sec'y of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). The Court recognized that because Munson was not a charity, "there might not be a possibility that the challenged statute could restrict Munson's own First Amendment rights," but concluded that this "does not alter the analysis." *Id.* at 956. Because fund raising is "at the heart of the business relationship between Munson and its clients, and Munson's interests in challenging the statute are completely consistent with the First Amendment interests of the charities it represents," no prudential considerations militated against recognizing third-party standing. *Id.* at 958.

The prudential considerations for recognizing third-party standing do not appear here, either, the defendant argues. *Jus tertii* (or "third-party") standing may be available when government action cultivates a "chilling effect" deterring a third party from exercising its First Amendment rights. *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 41 (1999) (Scalia, J., concurring). The defendant reasons that "[b]ecause the cooperative mail rule does not impinge on the First Amendment rights of the nonprofit entities, it cannot have a chilling effect on their speech." Def.'s Response at 7. As a final point, the defendant claims that the plaintiff's interests are not parallel but in fact run counter to the interests of its nonprofit clients, arguing (1) that losing business injures the plaintiff but not the First Amendment rights of its former clients and (2) that the plaintiff may later litigate with its former clients over the apportionment of the postal deficiencies. *Id.* at 8.

The court has no doubt that Reese Brothers and its former clients have the close relationship necessary to induce the former to prosecute this case with the necessary adversarial zeal. Reese and its former clients had a mutually advantageous contractual relationship. Compl. ¶ 9; *see Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 15 (2004) (explaining that third-party standing derives from the "relationship" of a plaintiff and a third party, not a third party's interests herself). That relationship ended after the Postal Service rescinded the parties' right to use discounted postage rates. *See Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) (recognizing third-party standing when "enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a legal entitlement"). At this stage of proceedings, they have a mutual interest in reversing the multi-million-dollar deficiency assessed

by the Postal Service, for which they are (the parties assert) jointly and severally liable. Pl.'s Mem. at 9 n.5; Gov't's Response at 8; *see Powers*, 499 U.S. at 413 (recognizing third-party standing even where relationship does not continue through end of judicial proceedings). Thus, no conflict exists as to their mutual interest in successfully invalidating the deficiencies in the first instance.[2] *Cf. Newdow*, 542 U.S. at 15 (finding child's interest in conflict with father's when latter lacked the ability to litigate as her "next friend" and child had stated that she had no objection to theistic declaration in Pledge of Allegiance). Finally, in comparison to prior cases recognizing standing, the parties' relationship appears sufficiently close. *Cf. Griswold v. Connecticut*, 381 U.S. 479 (1965) (permitting a Planned Parenthood official and a licensed physician to raise the constitutional rights of contraceptive users with whom they had professional relationships); *Craig v. Boren*, 429 U.S. 190 (1976) (permitting a licensed beer vendor to raise the equal protection claim of a male customer challenging a statutory scheme prohibiting the sale of beer to males under the age of 21 and to females under the age of 18); *Triplett*, 494 U.S. at 720 (1990) (permitting an attorney to challenge an attorney's fees restriction by asserting the due process rights of his client). Accordingly, the plaintiff has sufficiently concrete interests to ensure that it will be an effective advocate here.

    What does cast doubt on the plaintiff's standing is the fact that Reese Brothers has not demonstrated that its former clients have any impediment to bringing their own suit to challenge the Postal Service's letter rulings. *The Pitt News v. Fisher*, 215 F.3d 354, 363 (3d Cir. 2000).

---

[2] Prudential standing depends on a third party's ability to frame and argue the question before the court. *Munson Co.*, 467 U.S. at 956. Because the question before the court does not involve a resolution of the apportionment of liability for the postal deficiencies, the defendant's conjecture of a potential conflict tomorrow is orthogonal to evaluating the parties' reciprocal interests today.

The plaintiff's assertion of First Amendment claims, however, requires the court to relax this third criterion. *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). For the Supreme Court has enunciated concerns that

> justify a lessening of prudential limitations on standing . . . . [particularly] when there is a danger of chilling free speech, [as] the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Munson*, 467 U.S. at 956-57 (quoting *Broadrick*, 413 U.S. at 612).

The danger of chilling free speech certainly exists here. The Postal Service's action resulting in the termination of contractual relations between Reese Brothers and the nonprofits has effectively eviscerated the heart of their business relationship. *See Penny Saver Publ'ns, Inc. v. Vill. of Hazel Crest*, 905 F.2d 150, 154 (7th Cir. 1990) (upholding standing of newspaper challenging anti-solicitation ordinance on behalf of its advertisers). The plaintiff explicitly alleges and the defendant does not deny that the plaintiff's nonprofit clients withdrew their business from the plaintiff because of the Postal Service's determination that the plaintiff and its clients were ineligible to receive the nonprofit postal discount rate. Compl. ¶ 34. This constitutes evidence of chilled speech. *See Munson*, 467 U.S. at 956-57; *Penny Saver Publ'ns, Inc.*, 905 F.2d at 154. That the nonprofits have not brought suit in their own right is not dispositive, considering that the defendant has not indicated that it has attempted to enforce its judgment against the nonprofits. Indeed, the onus of the Postal Service's action has fallen on Reese Brothers, and there is nothing prudential about the court refusing to permit "the only effective adversary" of the government's action "to protect" itself. *Barrows v. Jackson*, 346 U.S.

249, 259 (1953).  The defendant disputes the plaintiff's characterization of the events at issue as deprivations of the nonprofits' First Amendment rights, but the court must delay the resolution of this question for a decision on the merits.  *Munson*, 467 U.S. at 958-59; *see* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1361 n.202 (2002) (observing that the Court "has always upheld third-party standing in cases in which [a] claim of third-party rights appeared [plausible]").  It is sufficient for today that the court discerns merely a danger of chilled speech.  *Id.* at 956.

### III.  CONCLUSION

For the foregoing reasons, the court concludes that the plaintiff possesses standing to bring this cause of action.

RICARDO M. URBINA<br>
United States District Judge